ERASTUS B. SEYMOUR *et al.*, *v.* HARRISON O. COWING *et al.*

On a trial before a jury where the court directs a verdict for the defendant, if there is any question for the jury the party should request the court to submit the same; if no such request is made the question cannot be considered on review.

Instruments not under seal may be delivered to the party to whom, upon their face, they are made payable, or who, by their terms, is entitled to some interest or benefit under them, upon a condition, the performance of which is necessary in order to perfect the title of the holder to enforce the contract.

APPEAL from an order of the Superior Court of Buffalo setting aside a verdict rendered at the trial of the same court in favor of the plaintiffs, against the defendants, Cowing and Buell, and ordering a new trial, with costs.

The action was brought on two promissory notes, made by the defendant, Cowing, payable to the order of Benson, and indorsed by him, and by Buell and Willard, partners in business at Buffalo, payable at the Bank of Attica, the one at fifteen months, for $886.72, the other for the same amount, at eighteen months from the date, and both dated the 27th October, 1856.

All the defendants except Benson answered; and the defenses were: First, a denial of all the material allegations of the complaint. Second, that said notes were made and indorsed without consideration for the accommodation of Benson, for the sole purpose of enabling him to stock his grist-mill, and with the agreement that the said notes, together with two other notes made at the same time, and for the same amount, and payable the one at nine months, the other at twelve months, should not be put into the market to be sold or otherwise negotiated at usury. In violation of such agreement the said notes were transferred by Benson to the plaintiffs upon a usurious agreement, and the proceeds applied in payment of his (Benson's) debts, and not in stocking his grist-mill. All of which matters were known to the plaintiffs. Third, that said notes were usurious and void.

On the trial the plaintiffs proved the making and indorsing of the notes, demand, protest and notice to the indorsers, and rested.

The defendants proved that the said notes were discounted by the plaintiffs at the rate of twelve per cent per annum. That Buell & Willard were partners in trade at Buffalo, and that Buell, one of said firm, solely for the accommodation of said Benson, and without the knowledge or consent of said Willard, and outside the scope of the partnership articles, indorsed said notes 'in the name of said firm, and of these facts the plaintiffs had notice. On the 20th October, 1856, and before the said notes were made, Benson had applied to Cowing to borrow his note for about $4,000, which Cowing declined to lend. That on the day of the date of said notes Benson again called on Cowing, and told him he could not get along without his paper, and requested him to make some notes, and proposed to leave with Cowing his (Benson's) notes, corresponding with those Cowing should let him (Benson) have, as memoranda of the transaction. Cowing told him he might do as he pleased about leaving his (Benson's) notes; that if he left them he should hold them as memoranda and would put them in his safe; that all he wanted was that he (Benson) should take up his (Cowing's) notes at maturity. That thereupon the four notes above described were made by Cowing. Thereupon Benson made four notes corresponding in amount and time and place of payment with those made by Cowing, and delivered them to Cowing, who put them in his safe, but has made no use of them. Cowing, although he keeps a bill-book, did not enter these notes in it.

The evidence being closed, the court directed a verdict in favor of the defendant Willard, and against the defendant Cowing, for the amount of said notes and interest; against the defendant Buell, for the amount paid by the plaintiff to Benson, and interest. The defendants, Cowing and Buell, separately excepted to the direction of the court.

The court ordered the exceptions to be heard in the first instance, at the General Term, and judgment in the mean time suspended.

The General Term set aside the verdict, and ordered a new trial, with costs to abide the event.

The defendants Cowing and Buell appeal to this court from the said order.

*M. A. Whitney*, for the appellants.

*Henry W. Rogers*, for the respondents.

MULLIN, J. The only question on the trial, and the only one before us for decision, is whether Cowing received the notes of Benson in exchange for the four notes delivered by him to Benson. If he did, the direction at the trial was right. If he did not—if they were received merely as memoranda of the date, amount and times of payment of the notes delivered by Cowing, then there was no exchange, and consequently no consideration for the notes in suit.

There was no conflicting evidence in regard to the arrangement concerning the notes, and the court was right, therefore, in ordering a verdict.

If the arrangement proved was susceptible of two constructions, it was for the court to construe it so as to give effect to the intention of the parties. If there was any question for the jury, it was the duty of the parties to ask that the case be submitted to the jury. No such request was made; they acquiesced in the action of the court, and they cannot now be heard to allege that there was any question withheld from the jury which should have been submitted to them.

We must treat the question as one of law, and that question is whether, on the facts proved, the agreement was one of exchange of notes, or whether it was a loan of the notes of Cowing, and Benson's were left as memoranda merely.

Before the notes in question were made, Benson applied to Cowing to borrow his notes for some $4,000, which Cowing refused to lend. The application was again renewed on the day the notes of Cowing were made, and Benson proposed to leave his notes with Cowing as memoranda of the transaction.

Cowing told him he might do as he pleased; all he wanted was that Benson should take up his (Cowing's) notes at maturity, and Benson's notes were not used by Cowing.

It is thus shown that an exchange was distinctly proposed by Benson and refused. There is not a particle of evidence to show that Cowing changed his mind. Indeed, no request was afterward made to him to exchange. The subsequent application, and the one in pursuance of which the notes of Cowing were made and delivered, was that Cowing should make his notes, and he (Benson) would deliver his as memoranda.

If, notwithstanding this arrangement, Cowing had, nevertheless, treated Benson's notes as operative securities, the judge might have found a change of purpose on the part of Cowing, or have implied a new agreement from the acts of the parties. But there is no act to justify any such inference, and any finding of fact, or any construction of the agreement by which an exchange of notes is imputed to the parties, is utterly without foundation in law or in fact.

It was competent for the parties to agree that the notes of Benson should be left with and be held by Cowing as memoranda merely. A deed, if delivered to the grantee or person entitled to take under, becomes at once absolute, whatever the intention of the parties may be. (*Arnold* v. *Patrick*, 6 Paige, 310; *Worrall* v. *Munn*, 5 N. Y., 229.) But instruments not under seal may be delivered to the party to whom upon their face they are made payable, or who is by their terms entitled to some interest or benefit under them, upon a condition the performance of which is necessary in order to perfect the title of the holder to enforce the contract. (Edwards on Bills, 186; *Miller* v. *Gombie*, 4 Barb., 146.)

Our reports are filled with cases in which, the delivery of notes and other obligations to the payee or obligee being shown to be conditional, the title of the holder was defeated.

It is said that the evidence that the notes of Benson were left as memoranda merely was incompetent because it contradicted the contract, making it inoperative, when by its terms it was an absolute engagement to pay.

The objection begs the question. Before the rule contended for can apply, it must appear that the contract was a valid agreement in the hands of Cowing. Had it been shown that the delivery was absolute, or had there been no evidence to show it conditional, the presumption of law would have been that the delivery was absolute, and in that case evidence could not be given that it was agreed between the parties differently from the terms of the contract. But until delivery the contract is wholly inoperative, and if it be shown that the instrument was delivered to take effect only on the performance of some condition, or on the happening of some future event, the contract is not operative and binding until the condition is performed or event has occurred.

Such evidence does not alter or vary the contract, when it takes effect it speaks for itself, but it prevents a delivery, which unqualifiedly would give instant effect to the agreement, from having any other or greater effect than is contemplated by the parties.

If the question as to the meaning of the contract could be treated as one of fact and not of law, the judgment of the General Term must nevertheless be affirmed. That court has power to review the findings of fact of the judge at the circuit, and this court in reviewing the judgment can only look into the case, in order to see whether there is any evidence to sustain the findings of the General Term. If there is, we must affirm the judgment. If there is none, it is our duty to reverse it.

The evidence fully justifies the action of the General Term in setting aside the verdict. If I am right in either of the foregoing positions, there was no consideration for the notes of Cowing, and a recovery thereon by the plaintiff cannot be sustained.

I discover no ambiguity in the language of the case where it says the notes were left with Cowing as memoranda. The word explains itself. Memoranda is defined by Webster to be, "*notes to help the memory.*" This is a very different purpose from that of being valid contracts to pay money.

The agreement of the parties can have but one interpreta-tion, and that is, that the notes of Benson were not delivered as binding obligations to Cowing. The notes of Cowing were, therefore, without consideration and void. The verdict was wrong. The order of the General Term, setting it aside and granting a new trial, was right, and should be affirmed; and, under the stipulation of the defendants, judgment absolute should be ordered against them, with costs.

DENIO, Ch. J. The notes in question having been nego-tiated to the plaintiffs at a higher rate of interest than that allowed by law, the question was, whether they were ope-rative paper in the hands of Benson, the payee, who negotiated them at that time. If they were, he had a right to dispose of them at a discount; but if they had their legal inception only at the time of such transfer, they were infected with usury.

The plaintiffs claim that Cowing, the maker, received value at the time of signing them by taking the notes of Benson, the payee, for equal amounts, and having the same time to mature; and they seek to apply to the case the principle of *Cobb* v. *Titus* (10 N. Y., 198). But it was shown by parol evidence that Cowing became the maker of the notes simply for the accommodation of Benson, and did not consent to receive the notes of the latter by way of exchange for those signed by him. It was proved that when Benson offered to leave his notes Cowing said he might do as he pleased about it; but if he did leave them, he would hold them as memo-randa of the transaction, and would put them in his safe; and that all he wanted was, that Benson should take up his (Cowing's) notes at maturity. This proof, if legal, showed that there was no consideration for the notes sued on until they were negotiated to the plaintiffs. The single question, therefore, is—if that can be said to be a question—whether the defendants were entitled to establish the circumstance stated by parol evidence. The plaintiffs insist that the fact of the exchange of the notes, and the constituting one set the consideration of the other, existed in writing. But that is a

68

mistake. The only writings were the notes of the respective parties. The fact alleged of their connection with each .other, and that one set was the consideration of the other, was not shown by any writing. To be sure, each party had the notes of the other, and all the notes were presumed to have been given for value; but that proves nothing to the purpose. Without parol proof, each note would be taken to have been given upon a separate and independent consideration. It may be that they ought to be read together, being between the same parties, and signed at the same time; but no method of reading them would have shown anything as to their relation to each other, or have shown that one was the consideration of the other. To establish that fact the plaintiffs would themselves have to resort to the parol evidence. That evidence, when produced, completely negatived the idea of an exchange of notes. Benson's notes were not negotiated to Cowing, but were given to him to be kept as memoranda; and the consideration expressed on their face was disproved.

It follows that the defense of usury was fully made out, and that the judge should have directed a verdict for the defendants.

The order appealed from should be affirmed, and judgment final be given for the defendants, pursuant to the stipulation.

All concur,

Judgment affirmed.