GRIERSON, appellant, **v.** MASON.

*Evidence — parol evidence to explain object of written instrument.*

It appeared from the evidence that the parties had made a verbal contract for the employment of defendant, and a written contract upon the same matter executed some months after defendant had entered into such employment was introduced. *Held,* that it was competent to show by parol evidence that the object for which the written contract was made, was to induce a third person to advance money to plaintiff.

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee. The action was brought to recover money realized by defendant, Thomas F. Mason, on the sale of goods consigned to him, between the 1st day of May, 1870, and the 1st day of May, 1871, by plaintiff, John Grierson, and plaintiff's assignors, the firm of John S. Cropper & Co. Defendant set up by way of counterclaim, that plaintiffs employed him as their agent to sell their goods, and that they guaranteed to him that his commissions, which were to be at the rate of five per centum, should amount to $1,500 per annum. Plaintiff produced a written agreement, signed by plaintiff's assignors, agreeing to give the exclusive right to sell their goods to defendant at the commission rate of five per cent, which contained no reference to the guaranty claimed by defendant. There was some conflicting evidence before the referee which is reviewed in the opinion. The referee found that this writing was not the agreement under which the defendant was employed, but that the paper was made for a special purpose,. to wit: to induce one Woods to advance money upon the goods of said firm, and the paper was given to and kept by Woods. He also found that the guaranty of at least $1,500 per year compensation was made to defendant by verbal agreement, and that said agreement was good, and found that defendant was entitled to receive the difference between the amount received by him on the sale of the consigned goods, and the sum guaranteed to him. The main ground of appeal was, that the evidence to show that the paper was given for the purpose found by the referee, was incompetent, and the referee erred in giving it the effect that he did

*A. C. & M. H. Ellis,* for appellant, cited *Durgin* v. *Ireland,* 14 N. Y. 326; 2 Phil. on Ev. 534; *Mufford* v. *M'Pherson,* 1 Johns. 413; *Mayor of New York* v. *Brooklyn Fire Ins. Co.,* 4 Keyes, 468.

*R. C. Elliott,* for respondent. The rule against the admission of parol evidence to vary a written contract does not apply, where the original contract was verbal and entire, and a *part* only of it was reduced to writing. 1 Greenl. on Ev., § 282; 2 Pars. on Cont. 553; Starkie on Ev. 671, 722, 727; *Wolf* v. *Frost,* 4 Sandf. 79; *Strader* v. *Lanbeth,* 7 B. Mon. 589; *Venable* v. *Thompson,* 11 Ala. 147; Chit. on Cont. 103.

DANIELS, J. This action was brought to recover moneys received by the defendant as agent from the sale of goods delivered to him to be sold, by the plaintiff and the firm of John S. Cropper & Co. Plaintiff was engaged in manufacturing dress linings, and succeeded the firm of John S. Cropper & Co., in that business, having acquired all their rights and interests and assumed all their liabilities in it. As a defense to the action, the defendant alleged, by way of counter-claim, his employment by the firm for the sale of their goods, as agent, for one year from about the 1st of May, 1870, at a yearly compensation of not less than $1,500, and a failure by them and the plaintiff, as their successor, to perform the contract made. The failure alleged consisted in the omission to deliver to him for sale all the goods manufactured, and also in the omission to deliver for that purpose a sufficient quantity to enable him to realize, by his commissions of five per cent on the sales, the amount of $1,500 per year, which he claimed to have been guaranteed to him by the terms of his employment, at all events. This theory was sustained by the referee, who reported in favor of the defendant for the recovery of a sufficient amount, in addition to the proceeds of sales in his hands, to pay him the salary or compensation of $1,500 for the year's employment.

The evidence given in support of the defendant's counter-claim, for the purpose of showing the terms of his employment, consisted in the statements made by himself, and his wife, as witnesses, and they tended to show an employment, by the terms of which he was to receive at least the sum of $1,500 above his expenses for the year's services, which was the same amount he received in the situation he surrendered to enter the employment of Cropper & Co., while Thomas Carmichael, who was the member of the firm by whom the agreement with the defendant was made, denied those statements, and testified that the defendant was employed to sell the goods of the firm at a commission of five per cent, which was the

only compensation he was to receive for his services during the time he continued to act as the agent of the firm. There was no other evidence given of the terms of the contract by which the defendant was employed of any substantial importance either way, or by which either statement of the terms of the agreement was to any considerable extent corroborated. These were the only persons whom it was pretended on either side were present when the agreement was made, and consequently, no positive evidence of its terms could be derived from any other source; and, in view of the circumstances that the defendant was dependent on his salary for the support of himself and his family, and was in a situation where he received $1,500 per year for his services, which he was induced to leave to enter into the employment of Cropper & Co., it very clearly justified the referee in his conclusion that he was employed by them on the terms alleged by him.

But, after he entered the employment of the firm, he drew up an instrument by which it was agreed that he should have the sole and exclusive right to sell all the goods manufactured by the firm, on such prices and terms as they might from time to time determine, for a commission of five per cent, and to make return of all sales on the first of each month, and, at his instance, this instrument was subscribed by the firm and delivered to him. The time when it was executed and delivered was not precisely shown, but it was probably within three or four months after the commencement of his employment.

This instrument bears the import of a completed agreement, although not subscribed by the defendant, and that from the terms contained in it would be presumed to be its character. But the defendant insisted that it was not made for any such purpose. It appeared in the evidence given upon the trial that the firm required advances upon their manufactured goods as far as they were able to procure them, in order to go on with the transaction of their business. The defendant's evidence was that he expected to procure advances for the firm from a friend of his named Woods, who was unwilling to make them unless the defendant had the written obligation of the firm that he should have the sale of all their manufactured goods, and that the instrument was subscribed by the firm for the sole purpose of giving Woods this assurance, while the evidence of Carmichael, who subscribed the instrument on the part of the firm, was that such was not its object, but that the design and

purpose of it was to reduce the terms of the defendant's employment by the firm to writing, and in this statement the evidence of Woods, at whose instance the instrument was drawn and presented for subscription by the defendant, and in whose possession it afterward remained, corroborated Carmichael. But, notwithstanding this corroboration, as it was not probable that the defendant would have abandoned the agreement, which the referee found from the evidence was made between him and the firm when he entered into its employment, by which he was guaranteed a compensation of $1,500 per year, and was to receive as much more as the five per cent commission on the sale of all the goods would pay, for a simple agreement that he should receive the commission only, leaving the amount at his risk; it was still a question of fact for the referee to determine as to which of the parties was right in this respect. There was no such preponderance either way as would justify the reversal of the judgment following his decision upon this subject.

It is claimed, however, on this subject, that the evidence given to show that the instrument was made in order to satisfy Woods, and induce him for that reason to advance money, on their goods, to the firm, was incompetent, and that the referee erred in giving it the effect which he did by his report. But the design and object of an instrument in writing, embodying the principal portion of a preceding oral agreement, even when apparently complete as an obligation in and of itself, have been allowed to be shown by parol evidence, and in that way a different effect has been given to it from what its contents alone would entitle it to receive. The court has the right to look at the antecedent and surrounding circumstances attending the execution of the instrument, for the purpose of determining its meaning and effect. Accordingly, a receipt for goods to be forwarded was not permitted to change the obligation of a preceding oral agreement, by which it was agreed that the party receiving them was to transport and deliver them as a common carrier. *Blossom* v. *Griffin*, 13 N. Y. 569. And the same ruling was made, in substance, in *Hutchins* v. *Hebbard*, 34 N. Y. 24, where it was held that "when the purpose for which a writing was executed is not inconsistent with its terms, it may properly be proved by parol." Id. 26. The instrument executed by the firm, in this instance, was entirely consistent with the purpose for which it was claimed to have been given by the defendant. In *Seymour* v. *Cowing*, 1 Keyes, 532, the court extended the rule beyond the limits to which the conclusion

of the referee in this case will require it to go, for it was there held, that notes delivered by one party to the other could be shown to have been delivered simply as a memoranda of the dates, amounts and times of payments of others, made by the party receiving it. The effect of the evidence was to show that the instruments, although appearing by their terms to impose the ordinary legal obligations of notes upon the person subscribing them, were yet made and delivered for an entirely different purpose, and to confine them to that purpose. No more than that was either proposed or attempted in the present case, and that, within the authorities already referred to, as well as the cases of *Barker* v. *Bradley*, 42 N. Y. 316, 319, and *Bostwick* v. *B. & O. R. R. Co.*, 45 id. 712, was entirely legal and proper.

The evidence given was sufficient to justify the referee in the conclusion he deduced from it, and, under the terms of the employment comprehended by the original oral agreement, that warranted the result reached in the report. No other reason has been urged in support of the appeal, and the judgment should therefore be affirmed.

DAVIS, P. J., and DONOHUE, J., concurred.

*Judgment affirmed.*