(20 App. Div. 194.)

ANDREWS & CO. v. HESS.

(Supreme Court, Appellate Division, Fourth Department. July 29, 1897.)

1. ACTION ON NOTE—CONTEMPORANEOUS AGREEMENT—PAROL EVIDENCE.
    In an action on notes executed by defendant in payment of territorial rights in a patent indicator, whose chief source of profit was in advertisements printed thereon, evidence of a contemporaneous oral agreement by the payee, to turn over to defendant enough advertisements to pay the notes, and to hold said notes till they were paid from the profits of such advertisements, was competent.

2. SAME—BONA FIDE HOLDERS—DEFENSES.
    Such agreement is a good defense to an action on the notes by one to whom they were transferred before maturity, and who credited the same on an antecedent debt due from the payee.

Appeal from special term, Onondaga county.

Action by A. H. Andrews & Co. against Oliver A. Hess. From a judgment dismissing the complaint upon the merits, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Raymond Cobb, for appellant.
Charles S. Kent, for respondent.

ADAMS, J. The plaintiff brings this action to recover upon two promissory notes executed by the defendant on the 1st day of May, 1894, one of which was for $2,000, payable six months after date, and the other for $500, payable four months after date. These notes were made payable to the order of the Patent Telephone Indicator Company, and upon the back of each was the following indorsement, viz.: .

"I secure the payment of this note by $27,000 worth of stock in the United Glass Co., of Syracuse, and any other assets I may this day be possessed of.
"O. A. Hess."

These notes, as it appears, were given upon the assignment of certain territorial rights in the Patent Telephone Indicator Company, which was a corporation organized under the laws of the state of Illinois, and engaged in business within the state of New York, although it had never filed a certificate with the secretary of state of the latter state, as required by section 15 of chapter 687 of the Laws of 1892. The evidence tends to show that one Walter F. Burns, the secretary and manager of the indicator company, applied to the defendant to purchase these territorial rights, and, to induce him to do so, represented to him that the invention owned by the company was a very valuable one, and that a large amount of money could undoubtedly be realized therefrom if he would make the purchase. This "indicator" was an instrument which was designed to be hung alongside of telephones, and connected therewith was a curtain containing a list of telephone subscribers. Upon one side of the curtain a space was left for advertisements, the idea being that these advertisements would be constantly brought to the notice of telephone subscribers, and that the indicator would consequently prove a valuable advertising medium. It was represented that the revenue to be derived from these advertisements would exceed $500 a year on every thousand indicators in use, and this fact constituted the chief pecuniary value of the right to sell the indicator.

Upon the trial the defendant was permitted to prove that at the time the notes in suit were given, and as an inducement to their execution and delivery, Burns stated to him that he simply wanted the notes to show the company that he had made a sale, and that, if the plaintiff would give them, he (Burns) would obtain advertisements from some of the larger advertisers, such as "Hood's" and "Paine's Celery Cure." The defendant testified that he hesitated about giving the notes, whereupon Burns stated to him:

"If you will give me your notes, I will instruct my solicitors to get the advertisements at once, and I will turn them over to you at $480 apiece; and you can assign them to me, and I will collect them, and credit them on the notes. So, you will never have to pay one dollar. * * * In case I do not get the contracts to fill the outside spaces, I will hold the notes, and they will not be presented till we have fulfilled our contracts together."

And the defendant thereupon said:

"Under those considerations, as long as you will procure enough contracts. and agree to hold the notes till you do that. I will sign the notes. But I want it distinctly understood that I have no money to pay these notes outside of the contracts that you will secure for me."

The defendant, relying, as he said, upon this assurance, executed and delivered the notes to Burns, and took from him a receipt in writing, which reads as follows, viz.:
"Syracuse, N. Y., 1st May, 1894.
"Rec'd of O. A. Hess, Esq., three notes,—two for $500 each, payable in 4 m.; and one for two thousand dollars, payable in 6 months. Said notes are rec'd by me as Sec. and Gen. Mgr. Patent Telephone Ind. Co., Chicago; and, as

said Sec. & Gen. Mgr., I hereby bind said Patent Telephone Indicator Co. to issue unto said O. A. Hess a valid and good assignment of all our rights in Patent Telephone Co. for Syracuse, & further to issue to him a guaranty to protect said patents against any infringements for full time of patents.

"W. F. Burns, Sec. & Gen. Mgr. P. T. I. Co."

No advertisements were furnished the defendant by either Burns or the indicator company, and, just prior to the maturity of the notes, they were transferred to this plaintiff.

Upon the trial, the facts which have thus far been detailed were made to appear by the evidence of the defendant, and they were not contradicted by Burns, who was not even sworn as a witness. At the conclusion of the evidence, the defendant asked leave to amend his answer to conform the same to the proofs, and this motion was granted upon conditions which it is unnecessary to detail. But it was thereupon stipulated in open court that a single question of fact might be submitted to the jury, and that, upon the rendition of a verdict thereon, the remaining issues should be determined by the court. In pursuance of this stipulation, the following question was duly submitted to the jury, viz.:

"Was it agreed by Burns with Hess at the time the notes in suit were given that he or the Patent Indicator Company, which he represented, would turn over to Hess advertisements enough to pay the notes; that the notes would be held, and the proceeds of the advertisements applied to their payment, and Hess not be compelled to pay anything on them?"

This question was answered by the jury in the affirmative, and their verdict was subsequently adopted by the court, which also found, upon evidence which fully sustains the finding, that no advertisements were furnished the defendant, and that the plaintiff took these notes to apply upon an antecedent debt owing it by the indicator company.

Upon these facts, the court concluded, as matter of law: (1) That the notes were fraudulently transferred by the Patent Indicator Company to the plaintiff; (2) that they were wrongfully and fraudulently diverted from the purposes for which they were given, and from their true destination, by the Patent Telephone Indicator Company, when it transferred them to the plaintiff; (3) that the failure of the Patent Telephone Indicator Company to keep the notes in suit, and perform its agreement with the defendant, would have constituted a defense to the notes if the same had been retained by the original payee; (4) that the plaintiff is not a bona fide holder of the notes, before maturity, for a valuable consideration; and (5) that the defendant is entitled to judgment dismissing the complaint, with costs.

The issues as finally framed, and the proofs contained in the record before us, justify the conclusions reached by the learned trial court, provided the evidence of the defendant respecting the contemporaneous oral agreement entered into between him and Burns at the time of the execution of the notes in suit was properly received over the plaintiff's objection. It is quite obvious, we think, that the main inducement which led the defendant to execute and deliver the notes in suit was the oral agreement on the part of the indicator company to furnish him advertisements or business, and to

hold the notes until the profits from these advertisements and business were sufficient to pay the same. It is equally plain, so far as we are able to discover from reading the testimony in the case, that these advertisements were the principal source from which the defendant anticipated any profit or benefit from the purchase of the territorial rights assigned to him by the indicator company. It is fair to assume, therefore, that, had not this inducement been held out to him, he would not have made the purchase. Indeed, he so states, and we think it follows that this promise furnished a part of, if not the entire, consideration for these notes, and that, when the indicator company failed to fulfill its promise, it may be said that the notes were practically without consideration. We have consequently this state of facts presented to us, which is virtually undisputed: The notes in suit were given for the purchase of a patent right, on the oral agreement of the payee that it would retain the same in its possession until it had furnished the maker with advertisements from which sufficient profits could be derived to pay the notes, and this agreement has been wholly disregarded by the payee. This state of facts, in our judgment, constitutes a defense to these notes in the hands of any one but a bona fide holder thereof, for value; for it brings the case fairly within the rule that, the delivery of the notes having been limited by the conditions upon which the delivery was made, the performance of those conditions was essential to the validity of the notes. Miller v. Gambie, 4 Barb. 146; Seymour v. Cowing, *40 N. Y. 532. The doctrine established by the authorities just cited has been repeatedly recognized and adopted by the courts of this state. Benton v. Martin, 52 N. Y. 570; Bookstaver v. Jayne, 60 N. Y. 146; Reynolds v. Robinson, 110 N. Y. 654, 18 N. E. 127; Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32; Bank v. Colwell, 57 Hun, 169, 10 N. Y. Supp. 864. In the case of Benton v. Martin, supra, it was held that the annexing of conditions to the delivery of a note is not an oral contradiction of the written obligation, though negotiable, as between the parties to it or others having notice thereof. And in the case of Higgins v. Ridgway, supra, which is the latest decision involving a consideration of this question, the rule as stated in the Benton Case is reiterated, and the precise language of the latter case is adopted.

We think the fair and reasonable import of the defendant's evidence in this case is that the delivery of the notes in suit was conditional; that such delivery was simply to enable Burns to prove by some tangible evidence that he had made a sale for his company; that there was practically no consideration for the notes; and that, in violation of the oral agreement, they were diverted from their true destination. If, as a matter of fact, such diversion was fraudulent, as was found by the trial court, and as we think it was fully justified in finding, then the case seems to fall within still another rule, which is that an oral agreement made contemporaneously with a written instrument may be proved when the circumstances would make the use of the latter, for any purpose inconsistent with the oral agreement, dishonest or fraudulent. Juillard v. Chaffee, 92 N. Y. 529. But, of course, as has been already intimated, the defense

of diversion, whether fraudulent or otherwise, is not available to the defendant in this action if the notes in question came into the plaintiff's hands before maturity, for value, and without notice. It only remains, therefore, to determine whether such was the fact. The uncontradicted evidence upon this branch of the case is that the Patent Telephone Indicator Company was indebted to the plaintiff in the sum of $6,000; that the notes in suit were turned over to the plaintiff to apply upon this indebtedness; that a receipt therefor was given by the plaintiff to the indicator company; and that the notes were credited to the latter upon the books of the plaintiff. These facts, we think, are insufficient, within the authorities, to constitute the plaintiff a bona fide holder, for value, so as to exclude the defense that the notes were wrongfully diverted by the payee from the purposes for which they were made. Insurance Co. v. Church, 81 N. Y. 218; Victor v. Bauer, 11 N. Y. St. Rep. 531, affirmed 143 N. Y. 672, 39 N. E. 21. We are fully persuaded, therefore, that the judgment appealed from should be affirmed. .

Judgment affirmed, with costs. All concur.