NIGHTINGALE v. J. H. & C. K. EAGLE, Inc.

(Supreme Court, Appellate Division, First Department. December 30, 1910.)

1. EVIDENCE (§ 429*)—PAROL EVIDENCE—PURPOSE—INTENTION OF PARTIES—INVALIDATING WRITING.

In an action for services rendered, plaintiff testified that he made an oral agreement with defendant, whereby plaintiff and another salesman were to receive 2 per cent. commission, to be divided equally between them, on all sales over a certain sum, and that defendant guaranteed that plaintiff should receive at least $7,500 a year, and that thereafter defendant told plaintiff that the other salesman wished a written contract, but they would not guarantee to pay him over $5,000 a year, with a certain commission, and that to induce the other to sign the written contract on those terms defendant desired plaintiff to join therein, which he did, and that the fact that plaintiff was only guaranteed $5,000 a year, with a commission, by the written contract, would not affect their prior oral agreement guaranteeing a larger salary. Held, that the evidence was admissible, not to destroy the written contract, but to show that it was not intended by the parties as a contract between them.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1969–1974; Dec. Dig. § 429.*]

2. MASTER AND SERVANT (§ 80*)—WAGES—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action to recover an amount claimed to be due for services rendered defendant as a salesman, evidence held to show an oral agreement between the parties by which plaintiff and another salesman were to receive 2 per cent. commission, to be divided equally between them, on all sales over a certain amount, and by which defendant guaranteed that plaintiff should receive not less than $7,500 a year.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 118, 119; Dec. Dig. § 80.*]

3. EVIDENCE (§ 432*)—PAROL EVIDENCE—CONTRACTS—FAILURE OF CONSIDERATION.

As between the original parties to a written agreement, parol evidence is admissible to show want or failure of consideration.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1981–1989; Dec. Dig. § 432.*]

4. EVIDENCE (§ 444*)—PAROL EVIDENCE—CONTRACTS—TIME EFFECTIVE.

Parol evidence is admissible to show that the written agreement sued upon was delivered to take effect only upon the happening of a future event.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1929–1944; Dec. Dig. § 444.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. EVIDENCE (§ 462*)—PAROL EVIDENCE—CONTRACT—PURPOSE OF CONTRACT.
    Parol evidence is admissible to show that the purpose of a written con-
    tract was different from that which its language alone would indicate.
        [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2134–2139;
    Dec. Dig. § 462.*]

6. WORK AND LABOR (§ 27*)—ACTIONS—ADMISSION OF EVIDENCE.
    In an action for the reasonable value of services rendered, evidence is
    admissible of what plaintiff was to receive under an oral contract be-
    tween the parties, for the purpose of establishing the value of his serv-
    ices rendered, though the oral contract was void under the statute of
    frauds.
        [Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 50–54;
    Dec. Dig. § 27.*]

    Ingraham, P. J., and Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Action by William Nightingale against J. H. & C. K. Eagle, In-
corporated. From a judgment for plaintiff, and an order denying a
motion for new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN,
LAUGHLIN, MILLER, and DOWLING, JJ.

William P. Niebrugge, for appellant.
John C. Tomlinson, for respondent.

McLAUGHLIN, J. Action to recover $2,500, alleged to be due
plaintiff for services rendered the defendant. The complaint states
two causes of action—one on an express contract to pay the plaintiff
a commission of 1 per cent. on all sales made by him and one Keller
during the time stated, with a guaranty that plaintiff's compensation
should be not less than $7,500 each year; the other on a quantum
meruit, alleging that the services rendered were reasonably worth
$15,000, and that he had only been paid $12,500, leaving a balance due
of $2,500, for which judgment was demanded. The answer put in
issue the material allegations of the complaint, and alleged payment,
accord, and satisfaction, and that the agreement referred to in the
first cause of action was void under the statute of frauds.

At the trial the rendition of the services was not disputed; the main
question litigated being how much the defendant agreed to pay there-
for. The plaintiff testified that he had an oral agreement by the terms
of which he and another salesman named Keller were to have 2 per
cent. commission, divided equally between them, on all sales over
$500,000, and the defendant guaranteed he should receive not less
than $7,500 a year; that, some time after he entered the defendant's
employ, John H. Eagle told him that Keller wanted a written con-
tract; that they would not guarantee to pay him over $5,000 a year,
plus a certain commission, and for the purpose of inducing him to sign
such contract he wanted the plaintiff to also join in it, and that if he
would do so the fact that he was therein only guaranteed a salary of
$5,000, plus a certain commission, would have no effect whatever on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

their previous parol agreement, by which defendant had guaranteed he should receive not less than $7,500; that the plaintiff thereupon signed the agreement, and each month thereafter was paid $416.67, making the $5,000 a year specified in the contract; that at the end of the first year Keller and the plaintiff were each paid $1,100, commissions earned, and the plaintiff received a check, drawn to the order of J. H. Eagle and indorsed by him, for $1,400, making the total amount received $7,500; that the second year no commissions were earned, and the defendant refused to pay any sum in excess of that specified in the written agreement, whereupon this action was brought.

That the plaintiff had the oral agreement testified to by him is established by the overwhelming weight of evidence. His testimony on that subject is not only uncontradicted, but he is corroborated by the witness Toepfer, the bookkeeper of the defendant, who stated that John H. Eagle, with whom the agreement was made, told him, when giving directions as to certain entries to be made upon the books, that—

"he had made a gentleman's agreement with Mr. Nightingale, according to which he was to give him $7,500, but that he wanted me to credit Mr. Nightingale and Mr. Keller alike, in order not to let Mr. Keller know about this agreement."

Not only this, but he was in fact paid the amount called for by the oral agreement the first year, notwithstanding the fact that he was only entitled under the written agreement to $6,100. The only explanation offered why this difference—$1,400—was paid to him was that it was a present. The jury found that such agreement was made, and it is difficult to see how they could have arrived at any other conclusion.

But it is said, despite the fact that the evidence shows the oral agreement was made, nevertheless the plaintiff was not entitled to recover, because his compensation was limited to that specified in the written agreement; in other words, that the evidence tending to establish the oral agreement was inadmissible, inasmuch as the effect of it was to destroy the written agreement. I think this evidence was admissible, not for the purpose of destroying the written agreement, but to show that the writing which purported to be an agreement was not, in fact, intended by the plaintiff and defendant as such. There is nothing new or startling in holding that parol evidence may be given to show that a writing purporting to be a contract was not, in fact, intended by the parties as such. There are numerous authorities to this effect, of which only a few need be cited: Grierson v. Mason, 60 N. Y. 394; Chapin v. Dobson, 78 N. Y. 74, 34 Am. Rep. 512; Julliard v. Chaffee, 92 N. Y. 529; Union Trust Co. of New York v. Whiton, 97 N. Y. 172; Schmittler v. Simon, 114 N. Y. 176, 21 N. E. 162, 11 Am. St. Rep. 621; Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961; Baird v. Baird, 145 N. Y. 659, 40 N. E. 222, 28 L. R. A. 375; Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32; Bank of Hamilton v. Klock, 73 Hun, 304, 26 N. Y. Supp. 259.

The question was directly passed upon in Grierson v. Mason, supra, and Judge Miller, who delivered the opinion of the court, in which all

of the judges concurred, holding that such evidence was admissible, said:

"The object of the testimony was to show that the instrument was executed for a specific purpose, and, that purpose being accomplished, was of no effect in changing the contract previously made with the defendant. I think that it was competent evidence for this purpose. The defendant had made out a contract. The plaintiff proved an instrument which altered the contract, and the defendant had a right to prove that the instrument introduced was not intended as an alteration of the contract, but with a view of accomplishing a particular purpose. Such evidence was not given to change the written contract by parol, but to establish that such contract had no force, efficacy, or effect; that it was not intended to be a contract, but merely a writing to be used in inducing Woods to make advancements upon the goods. This is in avoidance of the instrument, and not to change it, and I do not see why the testimony was not as competent in this case as it would be to show that a written instrument was obtained fraudulently, by duress, or in an improper manner. Such evidence does not come within the ordinary rule of introducing parol evidence to contradict written testimony, but tends to explain the circumstances under which such an instrument was executed and delivered, or to show that it was canceled or surrendered. It would, I think, have been proper to show that the instrument was given up, and equally so that it did not constitute the entire contract, as it was only for a special purpose."

This authority, so far as I have been able to discover, has never been questioned, but has been approved and followed many times by the Court of Appeals.

Judge Vann, in Thomas v. Scutt, supra, referring to the rule, said:

"Such proof does not recognize the contract as ever existing as a valid agreement, and is received from the necessity of the case to show that that which appears to be is not, and never was, a contract. Illustrations of this class may be found in the following citations: Beecker v. Vrooman, 13 Johns. 302; Hammond v. Hopping, 13 Wend. 505; Johnson v. Miln, 14 Wend. 195; Benton v. Martin, 52 N. Y. 570; Grierson v. Mason, 60 N. Y. 394; 1 Greenleaf's Ev. § 284; 2 Cowen & Hill's Notes, 665; note 494."

As between the original parties to a written agreement, it is always permissible to show want or failure of consideration. So one may prove by parol that the instrument sued upon was delivered to take effect only upon the happening of some future event (Seymour v. Cowing, 1 Keyes [*40 N. Y.] 532; Benton v. Martin, supra), or that its purpose and object were different from what its language, if alone considered, would indicate. Denton v. Peters, L. R. 5 Q. B. 474; Blossom v. Griffin, 13 N. Y. 569, 67 Am. Dec. 75.

It is also urged that the judgment ought not to be permitted to stand, because it is predicated upon an oral contract which was void under the statute of frauds. I am unable to see any force in this contention. The complaint contains, as already stated, two causes of action, one on contract and one on quantum meruit; but the plaintiff had a right to prove what he was to receive under the oral contract for the purpose of establishing the value of the services rendered (Jeffery v. Walker, 72 Hun, 628, 25 N. Y. Supp. 161), and that this was the purpose, in establishing the oral contract, is evidenced by the reference which the trial judge made to the authority just cited. Says Wells, J., in Lisk v. Sherman, 25 Barb. 433, cited with approval by Haight, J., in the Jeffery Case:

"It is the value of the services or property which the party receiving agreed to pay for them. In such cases it is said the contract furnishes the measure

of damages, and it makes no difference that the contract is declared void by the statute, provided it might be enforced except for the statute."

Not only this, but the issue submitted to the jury, to which defendant's counsel did not except in any way, was whether plaintiff was to be compensated at the rate of $7,500 a year, as he claimed, or $5,000 a year, as claimed by defendant. The jury found in favor of the plaintiff, and the verdict is sustained by the evidence.

For the foregoing reasons, I think the judgment and order appealed from should be affirmed, with costs.

LAUGHLIN and MILLER, JJ., concur.

INGRAHAM, P. J. (dissenting). The complaint in this action contains two causes of action. The first alleges a contract made between the plaintiff and the defendant on the 5th of October, 1905, by which it was agreed that the plaintiff should work for the defendant as a silk salesman for a term of two years, from January 1, 1906, and that the defendant agreed to pay the plaintiff for his services a commission of 1 per cent. on all sales made during the said period by either the plaintiff or one Keller, another salesman employed by the defendant, but that in no event was the commission or compensation so to be paid to the plaintiff to be less than $7,500 in each year; that the plaintiff entered upon the performance of his said contract, and performed the same fully and entirely for two years, when the season for selling silk expired; that the defendant has failed and neglected to carry out the provisions of said agreement for the period between January 1, 1907, and December 31, 1907, and has failed and neglected to pay the plaintiff $7,500, the agreed price to be paid therefor for the services rendered by him between January 1, 1907, and December 31, 1907, during that period the defendant having paid the plaintiff $5,000, instead of the $7,500 agreed to be paid. For a second cause of action it is alleged that between the 1st of January, 1906, and the 13th day of November, 1907, the plaintiff rendered services to the defendant, at its request, as a silk salesman, and that the said services were reasonably worth the sum of $15,000; that the sum of $12,500 has been paid, and the plaintiff demanded judgment for the sum of $2,500.

The answer, after denying the allegations of the making of the contract, alleges as a separate defense that on or about the 15th of October, 1905, an agreement in writing was entered into, a copy of which is attached to and made a part of the answer, which is the only agreement ever made between the parties hereto, and that the defendant had paid the plaintiff the full sum required to be paid by the agreement. The agreement thus annexed to the answer is dated October 15, 1905, and provides that it was entered into between the defendant, party of the first part, and J. H. Keller and William Nightingale, parties of the second part; that the party of the first part "does hereby engage the parties of the second part for the term of two years, from January 1st, as a salesman on a guaranteed salary of $5,000 per annum, each"; that, "should the sales of the parties of the second part run over the sum of $500,000 per annum, the party of the first part

is to pay to the parties of the second part 2 per cent. on all such amount in excess of the aforesaid figure—the 2 per cent. to divide equally. The party of the first part agreed to turn over to the said parties of the second part their entire business with the dry goods trade of the United States. The parties of the second part agreed to devote all their time and attention of every business day to the service and interest of the party of the first part." This was signed by the defendant, the plaintiff, and Keller.

Upon the trial the plaintiff was called as a witness, and, when his counsel attempted to prove the contract alleged in the complaint, counsel for the defendant asked whether the plaintiff intended to prove on a contract or a quantum meruit, and counsel for the plaintiff stated: "I am going to prove on a contract." The plaintiff was then asked about a conversation early in October, 1905, with a Mr. Eagle, to which counsel for the defendant objected, stating that, if there was a contract, the best evidence of the contract was the instrument at that time signed. Counsel for the plaintiff then stated that it was an oral contract for two years. The testimony was then objected to on the ground that the contract was void under the statute of frauds. The objection was overruled, and the defendant excepted.

The plaintiff then testified to a conversation with Eagle, at which Eagle, said: That he was anxious to employ the plaintiff as a salesman for the West. That any terms that he would make would be satisfactory to his brother, but that he would wait his brother's answer before settling up, and in the meantime the plaintiff and Keller could start in to work. This testimony was again objected to, upon the ground that the written contract was to control, the objection overruled and the defendant excepted. When Mr. John H. Eagle, the brother to whom reference had been made in a prior conversation, returned, the plaintiff had a conversation with him at which Mr. John H. Eagle said:

"While we know that you are making $6,000 a year, we don't think that Mr. Keller is worth more than $5,000. Now," he said, "I will give Mr. Keller $5,000, and I will see that your compensation is not under $7,500 a year. It will probably be a great deal more."

That this arrangement was to run for two years from the following January. After this conversation, the plaintiff entered into the employ of the defendant, and remained in such employ until December, 1907. The contract annexed to the answer was then shown to the plaintiff, who was asked what was said before the execution of this instrument. He testified that Mr. Eagle said to him that Keller wanted a contract, and the plaintiff told Eagle that he did not care for any contract; that a verbal contract was good enough for him. To this Eagle replied:

"Well, we had better get this contract. Keller don't care much at the price we are going to give him; but, if you will sign it, it will be all right. He will sign it with you."

That he did not recollect anything else that was said at that conversation. The defendant then insisted that, if this paper writing was the contract, it should be put in evidence, to which counsel for the plain-

tiff stated that this evidence was to show that the paper signed by the plaintiff was never to have any force. The witness said that he remembered Mr. Eagle's saying, "That will have no bearing on your agreement and mine whatever," and the plaintiff then introduced the contract annexed to the answer in evidence. The plaintiff further testified that this contract was signed by Mr. Eagle, the plaintiff, and Keller; that he was paid $416 a month, about $5,000 a year; that at the end of the first year he received an additional amount, making his compensation for that year $7,500; that the second year he received $5,000. · On cross-examination the witness stated that this contract was not understood to be a contract for himself, but he believed it was a contract for Keller; that the first year the sales amounted to a little over $600,000, but the second year the sales did not equal $500,-000. The plaintiff then offered evidence which tended to corroborate his testimony that there had been a verbal agreement by which he was to receive not less than $7,500 a year.

Mr. Charles Eagle was called for the defendant and testified that the plaintiff had agreed to accept $5,000 a year, and subsequently signed this contract which had been introduced in evidence; that no other contract was made with the plaintiff, and that Mr. John Eagle, with whom the plaintiff claimed to have had a conversation, was in Europe and not able to be examined as a witness. All through the testimony there was no indication that the plaintiff withdrew from the position that his counsel had taken at the beginning of the trial, that the action was based solely upon contract, and not upon quantum meruit.

At the end of the case the defendant moved to dismiss the complaint on the ground that the plaintiff had not established a cause of action, which motion was denied, and to which the defendant excepted. The court then submitted the question to the jury, stating that the substantial question which they were called upon to decide was whether or not the plaintiff was to be compensated at the rate of $7,500 per annum, as claimed by him, or at the rate of $5,000, as claimed by the defendant, and, at the end of the charge, stated:

"If you believe that the only compensation that the plaintiff was to receive was to be at the rate of $5,000 a year, you will find for the defendant. On the other hand, if you believe that the plaintiff has sustained the burden of proof in this case, namely, that he was to be paid at the rate of $7,500, then and in that event you will find for the plaintiff for the difference between the $7,500 and the $5,000 which he was paid in 1907, namely, $2,500."

There was no request to submit any question to the jury as to the value of the plaintiff's services; and the second cause of action, based upon quantum meruit, was apparently eliminated from the case, and no reference was made to it during the whole trial.

Now, it is clear that this cause of action, based upon this contract to pay to the plaintiff $7,500 a year, was void by the statute of frauds, and that the defendant was entitled to have that cause of action dismissed upon the trial; and, therefore, the only cause of action upon which the plaintiff at the trial sought to recover was one which was not enforceable.

Upon this appeal counsel for the plaintiff apparently concedes that this cause of action would not sustain a recovery, and now attempts to shift his ground and claim to recover upon the second cause of action, based upon quantum meruit. It is quite true that in a cause of action based upon a quantum meruit an unenforceable verbal contract as to the compensation that the employé was to receive is competent evidence as to the value of the services rendered, and will sustain a recovery for the amount that was to be paid by the verbal contract; but, in such a case, I think it for the jury to say what the value of the services rendered was, using the agreement of the parties as evidence of such value. The plaintiff on the trial, however, based his right to recover solely upon the verbal contract; and the court held, as a matter of law, that the only question for the jury was as to the terms of this oral contract, charging that if such oral contract was made the plaintiff was entitled as a matter of law to recover for the amount to be paid under the oral contract.

I do not think that a recovery can be sustained, because, if the real question at issue had been submitted to the jury, their verdict for the amount would have been justified. If no objection is made, the parties on the trial are at liberty to disregard the pleadings, and by agreement try the case upon any theory which is justified by the evidence; but in this case the defendant objected to proof of this oral contract, and it should have been excluded as unenforceable under the statute of frauds. The evidence was not at the trial claimed to have been competent for any other purpose than of proving a contract upon which the plaintiff sought to recover. I think, therefore, it was error for the court to admit the evidence of the oral contract. No recovery based upon the existence of that contract as an enforceable contract can be sustained.

I am also of the opinion that it was error to admit evidence of these conversations as tending to vary and contradict the express written contract executed by parties before plaintiff commenced the performance of the contract under which he performed the services for the defendant, and that all parties to that contract of October 15th are concluded by its terms. Here the plaintiff testifies that he had an oral agreement, entered into early in October, by which he was to receive for his services not less than $7,500 a year for two years from January, 1908. That contract was void under the statute of frauds, and was not enforceable by either party. Under that contract the defendant could have discharged the plaintiff on the 1st of January, 1906, or at any time thereafter, and there would have been no liability for the breach of a contract. The plaintiff could have left the employ of the defendant on the 1st of January, 1906, or at any time thereafter, and would not have been liable to the defendant for the breach of a contract. The contract was unenforceable. On the 15th of October the plaintiff was asked to enter into a formal written contract, which would bind both the plaintiff, the defendant, and Keller for a period of two years from the 1st of January, 1906. He executed that contract. It was complete in itself, expressed the terms of the employment and the conditions to be fulfilled, and under it the plaintiff agreed to devote all

his time and attention of every business day to the service and interest of the party of the first part (defendant) ; and for that it was agreed that he was to receive a salary of $5,000 a year and an additional compensation in case the sales exceeded $500,000 a year. There was no ambiguity about the contract; no question but that it on its face expressed the intention of the parties to it, and was the first enforceable agreement that had been made between the parties.

Until that contract was made, as before stated, the defendant could at any time discharge the plaintiff from its employ, and be liable only for the services rendered up to the time of the discharge. There was a consideration for this agreement in the mutual promises, and it was after it was made, and under it, that the plaintiff entered into the employ of the defendant. The plaintiff admits that he has received the full compensation payable under that contract. He asks, however, to recover for the services rendered a sum in addition to that which, by this formal written instrument, he agreed to receive as compensation for all his time and attention on every business day to the service and interest of the defendant, because of a conversation that took place before the contract was executed, at which, as he says, the defendant told him that this formal legal instrument was not to affect a prior unenforceable verbal agreement. It seems to me that the admission of this testimony directly falls within the rule which excludes all evidence of oral communications prior to or at the time of the execution of contract in writing to affect its terms.

It has often been held, and is the settled law, that where a contract is sought to be enforced it is competent for a party to it to prove that there was no consideration for it, or that it was never delivered, or that a delivery was conditioned upon the happening of an event which never happened, so that there never was an actual duly executed contract, delivery being an essential part of its execution; but there is no such claim here. There was no conditional delivery of the contract, and every condition that existed at the time it was made has been performed by both parties according to its terms. If this rule is adopted, no one can be safe in making a formal written contract for the employment of another; for after its term has expired, and it has been fully performed, one party to it may claim that there was a prior verbal agreement imposing additional burdens upon a party to it, and that the written formal agreement was never intended to be a contract, although on its face it is a completed contract, duly executed and delivered, and the services rendered performed in accordance with its terms.

This judgment is sought to be sustained upon a series of cases which I think fall far short of justifying this evidence. The principal case relied upon is Grierson v. Mason, 60 N. Y. 394; but this case seems to be clearly distinguishable, based upon an entirely different state of facts. In that case the plaintiff sought to recover from the defendant the proceeds of sales of merchandise less the commissions to which the defendant was entitled. The complaint alleged that the contract was made on the 1st of May, 1870. The defendant set up a counterclaim, and gave evidence tending to show that by an agreement under which he was employed it was agreed that his commissions

should amount to $1,500 per annum, and, if not, the plaintiff would make up the deficiency; and, applying the avails of all sales remaining in his hands, there was still due to him under the agreement $377.24. The plaintiff, upon the trial, introduced in evidence a written instrument, signed by the plaintiff, but not signed by the defendant, which, upon its face, purported to be executed on the 30th of April, 1870, and which sustained the contract as alleged in the complaint. Here the defendant alleged a valid contract, made between him and the plaintiff, different from that alleged by the plaintiff in his contract. The plaintiff, to prove the contract alleged in the complaint, introduced a written instrument, signed by the plaintiff, and not by the defendant, which contradicted the contract as set up by the defendant. Of course, in that case the defendant was not bound by this alleged instrument, which was not signed by him. He, to explain the existence of this instrument, stated that it was made months after the real contract between the parties was made, namely, in July or August, 1870, and that the plaintiff then signed it, not as a contract between the parties, but at the request of one Woods, who required it as a condition of advancing money on the goods of the plaintiff, and for the sole purpose of inducing Woods to make such advances, and it was delivered, not to the defendant, but to Woods. The referee before whom the case was tried found in accordance with the claim of the defendant. Of course, in such a case, the objection that the parties could not, by proof of oral statements made prior to the execution of a contract, vary its terms, was not an objection to this testimony, for there never was a contract executed by the defendant by which he was bound; and upon the face of the instrument it was never executed by the parties, and there was no contract covering the terms of the defendant's employment. The plaintiff sought to prove the contract by an instrument signed by him alone, and it was perfectly competent for the defendant, who had not signed the instrument, to prove that the instrument was not a contract, and was never intended to be such. Upon those facts there was clearly no consideration for this new agreement, and it was not, not having been executed by the defendant, binding upon him.

The other cases cited to sustain this judgment are equally inapplicable. Take the case of Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961. There the plaintiff put in evidence a written instrument by which the plaintiff agreed to assign, transfer, and deliver to the defendant a raft of hemlock timber which was covered by a chattel mortgage, a copy of which agreement was annexed to the instrument, and which was signed by both parties to the agreement. The defendant, on the trial, offered to show what was said between the parties in reference to the instrument; but the offer was excluded, upon the ground that the writing was the best evidence, and could not be contradicted or avoided by parol. The plaintiff further sought to show that, when this bill of sale was executed, the plaintiff refused to make an absolute disposition of the lumber, and they were informed that such was not intended; that the plaintiff should have the full benefit of the lumber, and what it brought on the sale, after paying the defendant's claim.

This evidence was objected to and excluded upon the same ground; and it was held that the contract was complete upon its face, and the trial court properly excluded all evidence that the instrument was not intended as an absolute sale, and as to what the real agreement between the parties was. In stating the exceptions to the rule, that evidence of what was said between the parties to a valid instrument in writing, either prior to or at the time of its execution, could not be received to contradict or vary its terms, Judge Vann says that:

"The real exceptions may be grouped into two classes, the first of which includes those cases in which parol evidence has been received to show that that which purports to be a written contract is in fact no contract at all. Thus fraud, illegality, want of consideration, delivery upon an unperformed condition, and the like, may be shown by parol, not to contradict or vary, but to destroy, a written instrument; and Grierson v. Mason, supra, is cited as an illustration of this class. The second class embraces the cases which recognize the written instrument as existing and valid, but regard it as incomplete, either obviously, or at least possibly, and admit parol evidence, not to contradict or vary, but to complete, the entire agreement of which the writing was only a part."

There are no facts proved to bring this case within either of these exceptions. There was no fraud, illegality, or other fact to justify a finding that this written instrument, formally executed by the plaintiff, was illegal or void, except possibly the fraud perpetrated upon Keller, of which neither the plaintiff nor the defendant could take advantage; but, instead of this case being an authority to sustain the contention of the plaintiff, it seems to me to be plainly an authority that required the court below to reject this evidence. See, also, Marsh v. McNair, 99 N. Y. 174, 1 N. E. 660. In that case it was said:

"This instrument is more than an assignment. It contains what both parties agreed to do. It shows that the assignment was made for the purpose mentioned, and precisely what Gibson was to do in consideration thereof. He became bound to do precisely what was specified for him to do, and he could have been sued by the assignors for damages if he failed to perform. Hence the instrument is not a mere assignment or transfer of the policy. It is a contract in writing, within the rule which prohibits parol evidence to explain, vary, or contradict such contracts."

The enforcement of the rule that parties are bound by a formal contract in writing which contains the obligations assumed by the respective parties, and that evidence of verbal contracts made before or at the time of the execution of the written contract is not to be received to vary or modify their terms, has been lately enforced by the Court of Appeals, where this court failed to sustain the rule. In Lese v. Lamprecht, 196 N. Y. 32,[1] there was a written contract for the sale of real property, but in which the court below had allowed testimony of an oral agreement that an incumbrance not specified in the written contract was to be accepted. The court, in deciding this case, said:

"The value and integrity of a written instrument is largely dependent upon the fact that it cannot be broken down or modified by a statement of alleged conversations and occurrences leading up to its execution. Where a written contract is clear in its terms, and purports to express the entire arrangement of the parties, and to direct upon all the questions under consideration, it conclusively determines the rights of the parties, and can neither be contradicted, varied, or explained."

[1] 89 N. E. 365.

I think, therefore, the parties were bound by the contract into which they formally entered, which was the only enforceable contract made by the parties; that evidence of parol agreements made prior to or at the time of the execution of this contract could not be received to vary or modify its terms; and that this rule applied in all its strictness to a case where the parties have formally executed and delivered a contract, which fully expresses the obligations of both parties, and such a contract cannot be obliterated because one party swears that it was agreed that it should not control as to a provision which was therein clearly stated.

I think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

DOWLING, J., concurs.