Evelyn W. Bowen et al., Plaintiffs, *v.* Harry Merdinger et al., Defendants.

Supreme Court, Special Term, New York County, October 11, 1949.

*Arthur Richenthal, Irving M. Moss* and *Stanley Geller* for plaintiffs.

*Mortimer Hays, Julius Hallheimer, Louis Reiss* and *Abraham Porter* for defendants.

BENVENGA, J. In this action in equity to rescind a contract entered into March 12, 1948, the fundamental issues are: (1) whether the defendant Merdinger, in negotiating the contract of sale of December 16, 1947, acted as an agent for plaintiffs or as a principal in his own behalf; and (2) whether the plaintiffs were induced to enter into the March 12, 1948, agreement (which they seek to rescind) by false and fraudulent representations.

The December, 1947, contract (hereinafter referred to as the " sales agreement ") is an agreement for the purchase and sale of the majority stock of the Bethlehem Silk Corporation. Under this contract the defendant Merdinger (hereinafter referred to as defendant) acting ostensibly as a principal, agreed to purchase, and Samuel and Alexander Kridel, as well as the plaintiffs themselves, agreed to sell, their stock at $230 per share; the total amount involved being approximately $700,-000. In addition, this agreement called for long-term contracts

of employment for the Kridels and the plaintiff Stephen Bowen (hereinafter referred to as Bowen).

The March, 1948, contract which the plaintiffs seek to rescind (hereinafter referred to as the " agreement in suit ") is an agreement to compensate the defendant for services rendered. It purports to set forth " the nature of the transaction which we are about to close ", and " our understanding as to the terms upon which we shall proceed as among ourselves ". After referring to the earlier sales agreement, to the negotiations for a loan of $475,000 with which to finance the purchase of the Kridel stock and other transactions, the agreement affirms that, in all of these matters, the defendant had acted " in behalf of and for the mutual benefit of " the plaintiffs and of himself. The agreement then asserts categorically that, " upon the consummation of all the transactions " enumerated therein, the plaintiffs, " as sole stockholders " of Bowmer Textile Corporation (to which reference will presently be made) " will, in effect, be in substantially complete control of the affairs and management " of Bethlehem. The agreement thereupon provides that, " as compensation for [his] services in this matter ", the defendant is to receive " an unconditional option " to subscribe to sixty shares of Class A common stock of Bowmer at $10 a share, or, " in the alternative and solely at [his] option ", to receive $5,000 in cash. Finally, the agreement provides that, in the event the defendant exercises his option (which he subsequently did), he and Bowen (who is also given the option to subscribe to sixty shares of Class B of Bowmer at $10 a share) shall each have the right to designate six persons to act as directors of Bethlehem.

It is to be noted in this connection that, shortly before the agreement in suit was entered into, the defendant organized two corporations: (1) Bowmer Textile Corporation (already referred to), a holding corporation to which the plaintiffs transferred their Bethlehem stock in exchange for Bowmer preferred stock; and (2) Regent Textiles, Inc., to which the Bethlehem assets were transferred in exchange for Regent stock. Although organized ostensibly for the purpose of making the exchange of Bethlehem stock for Bowmer stock tax-free, these corporations were also used to enable the defendant and his associates to obtain control of Bethlehem.

Read in the light of the evidence, the agreement in suit, described therein as an agreement to compensate the defendant for services rendered " in this matter ", is an agreement to compensate the defendant for services rendered in acquiring the Kridel stock for the plaintiffs, in negotiating the loan with

which to finance the purchase of that stock, and in performing other services for the purpose of enabling the plaintiffs to obtain control of Bethlehem, or, in the language of the agreement in suit, " substantially complete control " of Bethlehem.

1. That Bethlehem was a close family corporation is not disputed. Of its issued stock, the Kridels and members of their immediate families owned approximately 60%, the plaintiffs approximately 32%, and the balance of approximately 8% was in the hands of " key " employees. But although the plaintiffs held approximately one third of the Bethlehem stock, they had little, if any, voice in its management. As a result, the relationship between plaintiffs and the Kridels was strained, if not hostile.

Dissatisfied with their minority position and anxious to obtain control of Bethlehem, the plaintiffs, at the suggestion of a mutual friend, consulted the defendant, a certified public accountant and (though not admitted to the bar) a lawyer. He was recommended as an expert in corporate affairs and competent to advise the plaintiffs. He told the plaintiffs that they had a right of action, and agreed to advise and guide them in obtaining the evidence necessary to maintain a stockholder's suit. Then, at his suggestion, the plaintiffs transferred to him five shares of stock to enable him to qualify as a director. He qualified, was elected a director, and attended some of the meetings of the board of directors.

Learning some time thereafter that the Kridels were willing to sell their stock, the plaintiffs so reported to the defendant, and he agreed to act for them in the negotiations. But because of the hostile relationship between the plaintiffs and the Kridels and because the defendant felt that he might thereby be able to work out a better deal for plaintiffs, he suggested that he be permitted to act as a principal and that they remain as undisclosed principals. To this, the plaintiffs agreed.

Then the defendant, who was familiar with the affairs of Bethlehem, proposed a plan for acquiring the Bethlehem stock. This plan contemplated the use of some of the liquid assets of Bethlehem in part payment of the purchase price and the pledging, as security for a loan to finance the deal, of the remainder of Bethlehem's assets, together with the pledging of plaintiffs' Bethlehem stock and of the Kridel stock when acquired, as well as the personal pledges of Bowen and defendant.

It suffices to say that the plan, as conceived and proposed by the defendant, was carried into execution and effect. The Kridel

stock was acquired, the loan negotiated, and the agreement in suit entered into.

2. The determination of the issues presented, particularly the issue of agency, depends almost entirely upon the testimony of the parties themselves. The conflict in their testimony is irreconcilable. Each charges the other with fraud and perjury. The problem is whether the court should accept the testimony of the plaintiffs and their witnesses or that of the defendants and their witnesses. As for the witnesses called by the defendants, some are Merdinger's close associates and as vitally interested in the outcome of this litigation as the defendant himself. The testimony of the others, who are more or less interested in the result, must be read in the light of the circumstance that they testified to rather ambiguous statements alleged to have been made by the defendant during the negotiation, execution and consummation of the sales agreement — at a time when the defendant was ostensibly acting as plaintiffs' agent and the plaintiffs presumably acting under his directions.

I am satisfied that in the negotiation, execution and consummation of the sales agreement, the defendant acted as agent for the plaintiffs and not as a principal in his own behalf. I find it difficult to accept the defendant's version of the transaction; that is, that he negotiated the sales agreement as a principal in his own behalf and that thereafter he " orally " released the plaintiffs from their obligation to sell and entered with them into an agreement of joint venture and control of Bethlehem, Bowmer and Regent.

I am equally convinced, on the basis of the evidence, that the plaintiffs were induced to enter into the agreement in suit as a result of false and fraudulent representations.

3. In determining the issue of fraud, I have proceeded upon the assumption inherent in the finding of agency; that is, that a relationship of trust and confidence existed between the parties, in consequence of which the defendant was required to act in the utmost good faith, so that, if by misrepresentation or suppression of facts, the plaintiffs were induced to enter into the agreement in suit, the agreement is not only voidable and subject to rescission at the instance of the injured party, but the defendant has also forfeited all right to compensation for services rendered (*Heckscher* v. *Edenborn,* 203 N. Y. 210, 222–223; *Beatty* v. *Guggenheim Exploration Co.,* 223 N. Y. 294, 304; *Lamdin* v. *Broadway Surface Adv. Corp.,* 272 N. Y. 133, 138; *Bennett* v. *Burch-Buell Motor Corp.,* 221 App. Div. 517; *Sundland* v. *Korfund Co.,* 260 App. Div. 80, 82).

Moreover, since this relationship of trust and confidence existed prior to the making of the sales agreement and continued to the making of the agreement in suit and thereafter, the plaintiffs were entitled to rely completely upon the defendant to represent them with " undivided loyalty " (*Wendt* v. *Fischer,* 243 N. Y. 439, 444; *Meinhard* v. *Salmon,* 249 N. Y. 458, 464). Under the circumstances, it was incumbent upon the defendant to show affirmatively that no deception was practiced on the plaintiffs, and that " all was fair, open, voluntary and well understood ". (*Cowee* v. *Cornell,* 75 N. Y. 91, 100.)

Not only have the defendants failed to establish that no fraud or deception was practiced by Merdinger, but the plaintiffs have affirmatively proved the contrary.

4. Although the complaint alleges numerous misrepresentations and the evidence establishes that the plaintiffs relied on all of them in entering into the agreement in suit, it is clear, on the basis of the evidence, that they relied principally on the following representations: (1) that, as sole stockholders, officers and directors of Bowmer, they were and would continue to be, in actual control of both Bowmer and Bethlehem, (2) that the value of the Bowmer stock which defendant had set aside for himself was $5,000; and (3) that the exchange of plaintiffs' Bethlehem stock for Bowmer was a tax-free transaction.

The question of whether the exchange is a tax-free transaction is not free from doubt. For the purpose of this decision, I shall assume, without passing on the question, that it was tax-free and proceed to a consideration of the legal effect of the other alleged misrepresentations.

These latter misrepresentations are contained in the agreement in suit. They should be considered in the light of the fact that the primary purpose of the agreement was to reduce to writing what the plaintiffs had been led to believe would be the understanding of the parties as to what the defendant, as the plaintiffs' agent, might expect to receive as compensation for his services " in this matter ". When so considered, it would seem that the defendant was guilty not only of concealment of material facts, concerning which, in view of the trust relationship, the plaintiffs were entitled to be fully informed, but also of positive misrepresentations of fact.

Thus, when defendant was asked to explain the stock option, he stated that its purpose was to enable him to make a capital gains investment and thus avoid the payment of high income taxes; that the taking of the Bowmer stock would only give him the right to share in the earnings of Bowmer after the preferred

stock had been redeemed, and would not affect the plaintiffs' control of Bethlehem. The plaintiffs were not told, nor were they given to understand, that the Bowmer common stock had voting rights and might substantially affect their control of Bethlehem.

The defendant also stated that Bowmer and Regent had been formed for tax purposes; that is, to make the exchange of Bethlehem for Bowmer stock a nontaxable transaction; that therefore some of the provisions in the agreement, including the clause giving both him and Bowen the right to designate six directors of Bethlehem, had been inserted for tax purposes, and should be disregarded.

True, the agreement itself does not make the categorical representation that the value of the Bowmer stock which defendant had set aside for himself was worth $5,000. The agreement, however, which is in the form of a letter prepared by defendant, is so worded as to convey the impression that, as the reasonable value of the defendant's services was $5,000, so the value of the Bowmer stock was also $5,000, or thereabouts. That the Bowmer stock was then worth considerably more than $5,000 goes without saying. Indeed, defendant admits, at least inferentially, that the " book value " of the stock at that time was approximately $65,000.

It thus appears that, as compensation for his services, the defendant has received, not only Bowmer stock of the book value of $65,000, but, through his nominees, has himself, instead of the plaintiffs, acquired " substantially complete control " not only of Bethlehem, a million dollar corporation, but also of Bowmer and Regent. As for the plaintiffs, it suffices to say that they are now in a position no better than they were when they sought the expert advice and assistance of the defendant.

5. There remains to be considered questions of law upon which decision was reserved. The principal question relates to the application of the parol evidence rule.

It is well settled that, while parol evidence is inadmissible to vary or contradict the terms of a written contract, such evidence is admissible to show that a writing, which on its face purports to be a contract, is, in fact, no contract. Thus, it is competent to show that the writing is a sham contract, entered into in furtherance of a plan to induce a third party to enter into the contract or to take or refrain from taking some other affirmative action (*Grierson* v. *Mason,* 60 N. Y. 394, 397; *Thomas* v. *Scutt,* 127 N. Y. 133, 137–138; *Bernstein* v. *Kritzer,* 253 N. Y. 410, 416; *Morgenstern* v. *Diamond,* 220 App. Div. 191, 192–193). So, it is competent to prove that the plaintiffs were induced to enter into the

alleged contract by false and fraudulent representations or other improper means (*Thomas* v. *Scutt, supra; Adams* v. *Gillig*, 199 N. Y. 314, 319; *Bareham & McFarland, Inc.* v. *Kane*, 228 App. Div. 396, 401). As has been repeatedly pointed out, such evidence is received not to contradict or vary the writing, but to avoid or destroy its legal force, efficacy or effect (*Grierson* v. *Mason, supra; Thomas* v. *Scutt, supra; Bernstein* v. *Kritzer, supra*).

Applying these principles, it would seem clear that parol evidence is admissible to show that the writing was a sham contract, entered into in furtherance of a plan to induce the Kridels to sell their stock, and that, in the negotiation and execution of the sales agreement, the plaintiffs were, in fact, the undisclosed principals and the defendant their agent. It is equally clear that parol evidence is admissible to establish that the plaintiffs were induced to enter into the agreement in suit by means of false and fraudulent representations.

6. The cases upon which defendants rely are either distinguishable or inapplicable to the situation here presented.

*Nightingale* v. *J. H. & C. K. Eagle Inc.* (205 N. Y. 628, revg. 141 App. Div. 386) involved a parol agreement which was void and unenforcible under the Statute of Frauds (see *Morgenstern* v. *Diamond*, 220 App. Div. 191, *supra*).

*County Trust Co.* v. *Marra* (242 App. Div. 206, affd. 266 N. Y. 540) and *Manufacturers Trust Co.* v. *Grossman* (247 App. Div. 199) involved contracts which were illegal and against public policy (see *Bryant Park Bldg.* v. *Netley Service Corp.*, 79 N. Y. S. 2d 624, 625; affd. 274 App. Div. 915). So, also, *American Seating Co.* v. *Zell* (322 U. S. 709, revg. 138 F. 2d 641).

*Gordon Malting Co.* v. *Bartels Brewing Co.* (206 N. Y. 528) holds that, where a party signs a contract in his own name, he is personally bound thereby, and parol evidence is inadmissible to show that he was acting for an undisclosed principal. On the other hand, if the other party to the contract elects to sue the real principal, parol evidence is competent to show who were the real parties to the transaction.

These and other similar cases which defendants cite as " directly in point " are inapplicable to the situation here presented.

Here, the action is between the principal and the agent. Their rights only are involved, and not those of the Kridels or other third parties. The fact that such third parties were induced to enter into the sales agreement as a result of fraud or deception does not render that agreement void or illegal. As in the

case of the agreement in suit, the fraud or deception merely renders the sales agreement voidable at the instance of the defrauded party (see *Kelly Asphalt Block Co.* v. *Barber Asphalt Paving Co.*, 211 N. Y. 68, 72). Nor does such fraud or deception render the oral agreement between the principal and agent illegal or void, or render parol evidence of the agreement inadmissible in an action between the principal and agent.

7. In view of the disposition made of the alleged misrepresentations as to the tax consequence of the exchange of Bethlehem for Bowmer stock, the question of the admissibility of the expert testimony of Grant, Barwick, *et al.*, has become academic. Although the testimony may be admissible, I have not considered it in arriving at my decision.

As for the other questions of law, many of which relate to the admissibility of evidence offered by the defendants, I have decided to resolve them in favor of the defendants, giving the evidence the weight and value to which I deem it entitled, bearing in mind that, in some instances, the evidence is of doubtful admissibility.

Judgment is directed for the plaintiffs, ordering: (1) that the agreement of March 12, 1948, be rescinded, cancelled and declared null and void; and (2) that the defendants be directed to return and deliver to the plaintiffs the shares of Bethlehem stock delivered by them in exchange for Bowmer stock. Settle judgment in accordance with this decision.