PHILIP BERNSTEIN, Appellant, *v.* ABRAHAM KRITZER et al.,
Respondents.

(Submitted March 20, 1930; decided May 6, 1930.)

*Maxwell Slade, David H. Slade, J. Jacob Hahn* and
*C. Edward Benoit* for appellant. Defendants' indorse-
ment of the notes and the execution of the guaranty
having been made at about the same time as the principal
sales contract between plaintiff and Louis Kritzer, all of

said contracts are, therefore, a part of the same transaction. The consideration moving between plaintiff and Louis Kritzer, as purchaser, is as a matter of law sufficient consideration for the guaranty and indorsements. (*Smith* v. *Molleson*, 148 N. Y. 241; *Matter of Board of Commissioners*, 52 N. Y. 131; *Erie County Sav. Bank* v. *Coit*, 104 N. Y. 532; *McNaught* v. *McClaughry*, 42 N. Y. 22; *Jonas & Naumburg Corp.* v. *Michlin*, 222 N. Y. Supp. 442; 220 App. Div. 649; *Pennsylvania Coal Co.* v. *Blake*, 85 N. Y. 226; *Strombald* v. *Hanover Fire Ins. Co.*, 121 Misc. Rep. 322; *Severson* v. *Macomber*, 153 App. Div. 482.) It was reversible error to admit parol evidence either to contradict the writings in an attempt to show that Louis Kritzer was not to pay for the stock except from money that he should receive as salary, or that the parties to the sale entered into the transaction with the motive of defrauding the creditors of the corporation; or that it was understood that defendants were under no obligation to plaintiff by reason of their indorsements of the notes and the signing of the guaranty; or to show failure or inadequacy of consideration. (*Mitchell* v. *Lath*, 247 N. Y. 377; *St. Regis Paper Co.* v. *Hubbs & Hastings Paper Co.*, 235 N. Y. 30; *Newburger* v. *American Surety Co.*, 242 N. Y. 134; *Ruppert* v. *Singhi*, 243 N. Y. 156; Williston on Contracts, § 631; Wigmore on Evidence, §§ 2400, 2425; *Jamestown Business College* v. *Allen*, 172 N. Y. 291; *Camp* v. *Horn*, 208 App. Div. 122; *Englehorn* v. *Reitlinger*, 122 N. Y. 76; *Emmett* v. *Penoyer*, 151 N. Y. 564; *Sturmdorf* v. *Saunders*, 117 App. Div. 762; 190 N. Y. 555; *Stanton* v. *Granger*, 125 App. Div. 174; 193 N. Y. 656.) The parol evidence violated the rule that such evidence is not admissible where the parties in separate agreements set forth the intent of, and the consideration for the instruments sued upon. (*Franco-Americaine* v. *Bergstrom*, 171 App. Div. 870; 225 N. Y. 710; *Weiss* v. *Brown*, 201 App. Div. 560.) The parol evidence violated the rule that such evidence is not admissible for the

purpose of showing that a contracting party to a written contract assumed no obligation where the writing indicates that an obligation was assumed. (*Gridley* v. *Dole,* 4 N. Y. 486; *Girard Nat. Bank* v. *Brody,* 122 Misc. Rep. 790; *Guinzburg* v. *Blustein,* 121 Misc. Rep. 784; *Mead* v. *National Bank,* 89 Hun, 102; *German Publication Soc.* v. *Pichler,* 97 Misc. Rep. 644; *Blodgett* v. *Merrill,* 20 Vt. 509; *Calvosa* v. *Donovan,* 171 N. Y. Supp. 388.)

*A. S. Cutler, I. William Reisman* and *Jay Winston* for respondents. It was proper for defendants to prove that they received no consideration for their indorsement and that the delivery, if any, of worthless stock certificates in escrow to plaintiff's mother-in-law, was in reality no consideration. (*Higgins* v. *Ridgway,* 153 N. Y. 130; *Citizens Sav. Bank & Trust Co.* v. *Paradis & Sons,* 146 Atl. Rep. 3.) The parol evidence rule does not bar the testimony. This is not an attempt to vary or add to a written instrument. The evidence here looks to the root of the contractual relationship and seeks to destroy the written instrument and to show there never was a contract. (*Thomas* v. *Scutt,* 127 N. Y. 133; *Grannis* v. *Stevens,* 216 N. Y. 583; *Higgins* v. *Ridgway,* 153 N. Y. 130; *Citizens' Sav. Bank & Trust Co.* v. *Paradis & Sons,* 146 Atl. Rep. 3; *Smith* v. *Dottenweich,* 200 N. Y. 299; *Garfield Nat. Bank* v. *Colwell,* 57 Hun, 169; *Rosenthal* v. *United Transp. Co.,* 196 App. Div. 540; *Savage Realty Co., Inc.,* v. *Lust,* 203 App. Div. 55; *Swift* v. *Beers,* 3 Den. 70; *Joslyn* v. *Dow,* 19 Hun, 494; *Barton* v. *Port Jackson,* 17 Barb. 397; *Lafarge* v. *Herter,* 9 N. Y. 241; *Sprague* v. *Webb,* 168 App. Div. 292; *Dressel* v. *Hauser,* 101 Misc. Rep. 574; *Materne* v. *Horowitz,* 101 N. Y. 469.)

CRANE, J. The Chelsea Auction Rooms & Art Galleries, Inc., was a domestic corporation consisting of two stockholders, Abraham Kritzer and his wife, Augusta Kritzer. Louis Kritzer, the father of Abraham, may have been a stockholder, as he was called " a dummy

in the corporation, a third party." Abraham Kritzer said his father was a dummy for him and his wife. Some time prior to the transactions here in question, Abraham Kritzer and his wife sold fifty per cent of the stock, or 252 shares, to Philip Bernstein, a brother-in-law, who had married Abraham's sister. Philip and his wife's relatives did not get along well together, and Philip claims to have sold back his stock to them, or to his father-in-law, for the amount he paid for it, $26,000, and to have received therefor 104 promissory notes. The agreement of sale was a very formal instrument, signed and sealed by L. Kritzer, the father, and Philip Bernstein. It was drawn in the lawyer's office, with all the parties present. Philip Bernstein, so says the document, sells to Louis Kritzer 252 shares of the capital stock of the Chelsea Auction Rooms & Art Galleries, Inc., for the sum of $26,000, and Louis Kritzer agrees to pay that sum by executing and delivering to Philip Bernstein 104 promissory notes, each for the sum of $250, "which notes are to be made by Louis Kritzer and endorsed by Abraham Kritzer and Augusta Kritzer." The notes are to be paid weekly, bear no interest, and to be non-negotiable. The contract further provides:

" *Fourth.* It is hereby mutually understood and agreed by and between the parties to this agreement that upon the execution of this agreement, Philip Bernstein will deliver to Rachael Kritzer, said two hundred fifty two (252) shares of the capital stock of the Chelsea Auction Rooms & Art Galleries, Inc., and it is understood and agreed between the parties hereto that the said shares of stock shall be held in escrow by the said Rachael Kritzer.

" *Fifth.* It is hereby mutually understood and agreed between the parties hereto that prior to the delivery of the said two hundred fifty two (252) shares of stock to Rachael Kritzer, the said Philip Bernstein agrees to endorse the said shares of capital stock and transfer the same to Louis Kritzer.

" *Sixth.* It is further mutually understood and agreed

between the parties hereto that as each note of Two Hundred Fifty ($250) Dollars aforementioned is paid by Louis Kritzer, it is agreed between the parties, as hereinbefore mentioned, that two shares of the said two hundred fifty two (252) shares of the capital stock shall be released from this escrow agreement and that the said two shares are to be delivered to Louis Kritzer."

Annexed to the said agreement was the following undertaking, signed and executed by Abraham Kritzer and his wife:

" We the undersigned, Abraham Kritzer, and Augusta Kritzer, hereby guaranty the performance by Louis Kritzer of each and every condition of a contract between Louis Kritzer and Philip Bernstein, dated the 16th day of June, 1926, and the undersigned further agree to waive all defenses which they may have as endorsers on the notes executed by Louis Kritzer in accordance with the terms of the agreement aforementioned.

" Dated, NEW YORK, *June* 16, 1926.

" AUGUSTA KRITZER
" ABRAHAM KRITZER."

The stock was turned over to Rachael Kritzer pursuant to this agreement, and twenty-two of the notes, aggregating $5,500, were thereafter paid. Eighty-two notes remained unpaid, forty-eight of which had matured and were unpaid at the time this action was instituted.

The action is brought against Augusta Kritzer and Abraham Kritzer on their indorsements and guaranty of performance, as above set forth, to recover the amount of the unpaid notes. Both defendants answered, setting up as a defense that it was mutually agreed between the plaintiff and the defendants that the said papers, which are the basis of the plaintiff's alleged cause of action, should impose upon them no obligation whatever, and that the defendants were not to be liable by reason thereof.

The basis for this alleged defense was given in the testimony of Abraham Kritzer as follows: Philip Bern-

stein was a certified public accountant, and feared trouble in the corporation. He wanted to withdraw and have Louis Kritzer come in and take over his shares, as a dummy. " He brought over to me the notes," said the witness, " and told me that my father signed them, and I says ' What do you want me to sign them for? You have got my father's signature. What do you want me to sign them for? ' He says ' Without your signature and your wife's signature, the thing will not look legitimate here and the creditors would probably set the whole thing aside, and I would get in the same trouble over again. I will put down non-negotiable.' He told me that he would never use the notes against me or bother me. It was only a question here to make it look legal."

This evidence was admitted over objection and exception, the objection being that such evidence tended to contradict the terms of the written instrument.

The judge charged the jury as follows: " The * * * vital question for you gentlemen to answer * * * were the notes in question, these forty-eight notes, signed and given for a *bona fide* sale of stock, or were they simply signed and given with the understanding that the signers were not to be bound by their signatures. * * * If there was no sale and no intention that there be a sale, then of course there would be no consideration for these notes and the plaintiff could not recover."

No exception was taken to this issue as thus left to the jury, so that the only question for this court to determine is whether in view of all the facts and the pleadings above stated, the court should have admitted the testimony of Abraham Kritzer, and whether such evidence, if believed, constituted a defense.

In the first place, the contract of sale was executed under seal by Louis Kritzer, the father. The plaintiff delivered his stock and received $5,500 in part payment of the notes. It was open to these defendants, however, to prove not only that there was no consideration for their contract, but that there was to be no contract, and that

as between them and the promisee of the non-negotiable instruments, there was an understanding that they would never be held liable; in other words, that it was all a sham transaction to carry out some ulterior purpose of Philip Bernstein. How the jury, as triers of the facts, could have believed this strange story of Abraham Kritzer, may be difficult to understand. The review of the facts has passed the Appellate Division and may not be considered in this court. We can only consider the law points raised by the admission of the testimony referred to, and the sufficiency of such evidence to raise a question of fact. *Higgins* v. *Ridgway* (153 N. Y. 130) deals with the subject of the conditional delivery of a promissory note, and it was there held that it was competent for the maker to show that the note was given without consideration, and was made for an accommodation of the payee and delivered upon an express agreement that the defendant should not be held liable thereon.

In the leading case of *Thomas* v. *Scutt* (127 N. Y. 133) this court said that want of consideration or delivery upon an unperformed condition and the like, may be shown by parol, not to contradict or vary, but to destroy a written instrument. " Such proof does not recognize the contract as ever existing as a valid agreement and is received from the necessity of the case to show that that which appears to be, is not and never was a contract." *Smith* v. *Dotterweich* (200 N. Y. 299) is another instance of the application of the rule. (See, also, *Title Guarantee & Trust Co.* v. *Pam*, 232 N. Y. 441.)

A different conclusion follows where an agreement or note is recognized as such at the time of the making, but is to be avoided by the happening of some subsequent event. Such is the case of *Jamestown Business College Assn.* v. *Allen* (172 N. Y. 291). Where there has been a complete delivery of a note, it cannot be defeated by subsequent contingencies that may or may not arise.

The appellant, in his brief, claims that the defendants

sought to vary the agreement by showing that Louis Kritzer was to pay the notes out of the weekly salary of $250 which he received from the corporation, instead of paying them absolutely and in all events. The defense goes further than this. The guaranty, say the defendants, was without consideration; there was no actual sale and no genuine valid notes given to Philip Bernstein by his relatives-in-law.

The jury by its verdict has decided that the story of Abraham Kritzer is true, and however incredible this may appear to us, we cannot disturb the finding. Such facts, if true, constitute a legal defense, and the evidence was admissible under the pleadings.

The judgment should, therefore, be affirmed, with costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.