## (April 24, 1962)

■ Judith Schackman, Appellant, v. A. Arthur Tracy, Respondent. Appeal from a judgment of the Supreme Court in favor of defendant, entered March 9, 1959, in New York County, upon a decision of the court at a Special and Trial Term without a jury.

*Per Curiam.* In this nonjury action for a balance claimed to be due on a promissory note, the court dismissed the complaint at the conclusion of the entire testimony. We believe that this represented a proper adjudication on the contested facts. It appeared that plaintiff's husband had had some connection with a corporation known as Nassau Management. He had terminated all official relations with the corporation because of claims that it involved a conflict of interest. Defendant was an officer of and had a large investment in Nassau Management. Prior to the note in question and prior to the time that the city authorities had directed plaintiff's husband to sever his connection with Nassau Management, plaintiff and her husband had made several loans to Nassau Management on terms very favorable to plaintiff.

Application for the loan was made to plaintiff by officers of Nassau Management. As far as plaintiff was concerned, it was presented to her as an accomplished transaction. Withdrawal slips on her bank account were presented to her for signature. Shortly thereafter checks of her bank were presented which, on instruction, she indorsed to the order of defendant. These checks were deposited in defendant's bank account without his knowledge. The court could have found that all of these steps were taken by officers of Nassau Management (other than defendant) acting in concert with plaintiff's husband.

Some days later the same officers presented a note to defendant for $25,000. This money had already been placed in defendant's bank account and checked out by him to Nassau Management. He at first refused to sign but did so when it was explained to him that the loan was to Nassau Management, that it involved no liability on his part, and that the sole reason for his appearance in the transaction was to conceal the fact that plaintiff and her husband were doing business with the corporation. He did note in his checkbook that the $25,000 deposit was a loan, and he did sign a formal letter addressed to plaintiff thanking her for advancing the money.

Thereafter $15,000 of the $25,000 was repaid. The money came from Nassau Management's account and was drawn and delivered to plaintiff's husband by the same officers. Neither plaintiff nor defendant appears even to have been consulted as to the repayment.

Both of the Nassau Management officers refused to testify, pleading their privilege under the Fifth Amendment. Plaintiff's husband did not take the stand.

Defendant's version of the transaction, if believed, shows that he received no consideration and was not deemed by either the lender or the borrower to be a real party in interest. The circumstances surrounding the transaction lend support to this version.

The judgment should be affirmed, with costs.

EAGER, J. (dissenting). The plaintiff established without dispute that three bank cashiers' checks, aggregating $25,000, drawn to the order of plaintiff and indorsed by her to the defendant, were, on October 11, 1957, deposited into the defendant's bank account; that on October 24, 1957 he signed and delivered a promissory note unconditionally providing for the payment by him of this sum to the plaintiff upon demand; that this note was delivered by the defendant to the plaintiff with a letter stating "With many thanks for your kind favors"; and that $10,000 of said note signed by defendant, with interest, remains unpaid. Clearly, this made out a prima facie case.

The defendant's defense was that the $25,000 was a loan not to him but to the Nassau Management Company, Inc. (hereinafter referred to as "Nassau"), a corporation which is now insolvent. Plaintiff and her husband were allegedly interested in this corporation, and the defendant was also interested therein and a senior vice-president thereof. In substance, it is the claim of the defendant that he was a party to this transaction involving, as he alleges, a loan to Nassau, upon the understanding that he was merely to be a "conduit" for such loan and that he "would not be held responsible for the money" as this was a deal between plaintiff's husband and Volner (also interested in and an officer of Nassau).

The defendant, however, failed to make out his alleged defense by competent evidence. His position here that (quoting from his brief) "The instant case * * * presents the issue between the immediate parties to a note of a 'conditional delivery'" is not tenable. There is nothing in the evidence to establish that the note was delivered to be effective upon the performance of a condition precedent. The condition here claimed by the defendant was merely that he "would not be held responsible for the money" because he was being

merely a "conduit" for a loan to Nassau. Any such condition would be an express contradiction to the very terms of the written note and, therefore, parol evidence would not be admissible to establish the same. (Cf. *Jamestown Business Coll. Assn.* v. *Allen,* 172 N. Y. 292, 302.)

True, if the loan was in fact one to Nassau, the defendant could show that his note later given to plaintiff was without consideration and given merely for the accommodation of the plaintiff and her husband; and such a showing would avoid the note. (Cf. *Bernstein* v. *Kritzer,* 253 N. Y. 410, 416; *Higgins* v. *Ridgway,* 153 N. Y. 130.) But this, of course, would be a matter of defense, and the competent evidence in the record simply does not sufficiently support such defense.

In the first place, the documentary evidence rather clearly establishes that the loan here was a loan to the defendant though the funds were channeled into Nassau's bank account. And the defendant, who was financially interested in the affairs of Nassau, in fact received the equivalent of this sum of $25,000 from Nassau on its being deposited in the bank account of Nassau. At the time of the loan, he had an outstanding check from Nassau for $50,000, and upon the deposit of the $25,000 received on the loan from plaintiff into Nassau's bank account, the defendant's check for $50,000 on this bank account was deposited in defendant's personal bank account. Then, later, the defendant, who was experienced in business transactions, signed and delivered the promissory note for $25,000 unconditional in terms. Certainly, he knew that the effect of the note was to bind him personally to repay the loan, and his obligation so assumed is not to be avoided except upon clear evidence of his alleged defense.

Moreover, it appears that, at a meeting of his creditors in January, 1958, the defendant submitted in his own handwriting a list entitled "Monies received by Tracy (the defendant) from various sources", and therein in his own handwriting, under the heading "loans", he listed as indebtedness owing to plaintiff the sum of $25,000. The defendant, who testified, does not adequately explain why, three months after he delivered the note, he wrote that this $25,000 was a loan to him, if this were not so.

In any event, the judgment in favor of the defendant may not stand on the record here because it is supported principally by the incompetent evidence of the understanding by defendant with Volner and the hearsay statements of said Volner. It was not established that Volner was the plaintiff's agent with authority to bind her to the statements made by him, nor is there any proof that they were made in furtherance of a conspiracy to which plaintiff was a party. Therefore, the conversations between the defendant and Volner in the absence of plaintiff were clearly hearsay and were inadmissible except possibly as bearing on the state of mind and intentions of defendant. These conversations were received in the first instance by the trial court with the understanding that they would be connected with the plaintiff. This was never done. Nevertheless, the trial court, as indicated in its decision, relied upon them in finding for the defendant. Certainly, a decision for defendant based upon this incompetent evidence should not stand.

In summary, it appears from the record here that the defendant voluntarily signed and delivered a note unconditional in terms representing an actual loan by plaintiff of $25,000. Later, the defendant in his own handwriting voluntarily admitted that he was indebted to plaintiff on account of "monies received by" him under heading of "loans". There is no evidence whatever that the defendant was the victim of fraud or of a conspiracy. On the record here, the evidence is entirely unsatisfactory to support his alleged defense that he was not to be responsible for the loan. Furthermore, the decision here, founded on hearsay

statements of Volner, is contrary to the law. In the interests of justice, however, I would grant a new trial. Thereon, the testimony of Volner and Korman (secretary and treasurer of Nassau), with the claim of privilege no longer available to them, and the testimony of Saslow (president of Nassau) and of plaintiff's husband, may shed light upon the transactions between the parties.

Valente, Stevens and Steuer, JJ., concur in *Per Curiam* opinion; Eager, J., dissents in opinion in which Rabin, J. P., concurs.

Judgment affirmed, with costs to the respondent.