■ National Westminster Bank USA, Appellant, v Joseph Petito, Respondent. [608 NYS2d 427] —Order, Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered May 8, 1992, which granted defendant's cross motion for summary judgment dismissing the complaint, and denied plaintiff's motion for summary judgment, unanimously affirmed, with costs.

On November 4, 1983 Hydrodyne Industries, Inc. entered into an accounts receivable loan agreement, a term note and a security agreement ("the loan agreements") with plaintiff National Westminster Bank USA ("the Bank"), and granted the Bank a security interest in all of its assets. As further security for the loans defendant Joseph Petito, Hydrodyne's president, executed a personal guarantee of Hydrodyne's obligations under the loan agreements. Thereafter, the Bank made advances to Hydrodyne, some of which were repaid.

On August 31, 1984, while still owing the Bank $665,689, Hydrodyne filed a petition for relief under chapter 11 of the Bankruptcy Code (11 USC) in the United States Bankruptcy Court for the Eastern District of New York. It is not disputed that the commencement of this proceeding constituted an event of default under the loan agreements, rendering the outstanding principal balance plus interest and reasonable attorneys' fees payable immediately. On November 8, 1984 the Bankruptcy Court entered an order granting the Bank's motion pursuant to section 362 (d) of the Bankruptcy Code to lift the automatic stay of enforcement of Hydrodyne's obligations with respect to certain Hydrodyne assets as to which the Bank had a duly perfected security interest. The Bank then commenced an action in Suffolk County Supreme Court seeking an order of seizure with respect to those assets, which was granted on January 22, 1985.

In March or April of 1985 Hydrodyne made a payment to the Bank reducing its indebtedness to approximately $608,000 plus interest. Thereafter the parties entered into negotiations with a view toward Hydrodyne's continuing in business. Those negotiations were memorialized in a letter agreement dated July 5, 1985, signed by Mr. Petito on behalf of Hydrodyne and individually, whereby Hydrodyne's debt would be rearranged into two new loans, and Mr. Petito would sign a new personal guarantee secured by all of his Hydrodyne stock.

On November 6, 1985 the parties executed a stipulation,

which was presented to the Bankruptcy Court, reciting that the Bank had applied for an order converting Hydrodyne's chapter 11 proceeding to a proceeding under chapter 7 of the Bankruptcy Code (under which Hydrodyne's assets would be sold to satisfy its creditors), but that "the Bank is willing to finance the Debtor's [Hydrodyne's] operations after confirmation of a Chapter 11 plan of reorganization on the terms and conditions set forth on Exhibit 'C' annexed hereto." Exhibit "C" was the July 5, 1985 letter agreement referred to *supra*. The stipulation also provided that Mr. Petito, by executing the stipulation in his individual capacity, agreed that "he will execute and deliver all of the documents, agreements and instruments annexed hereto as Exhibit 'E'." Exhibit "E" consisted of a Stock Pledge Agreement, an irrevocable proxy, a "Stock Power" Blumberg form, and most pertinent here, a "New Guarantee" to be signed by Mr. Petito in order to induce the Bank to make advances, loans or extensions of credit to Hydrodyne. Hydrodyne's bankruptcy plan, which was to be funded by a restructured debt as contemplated by the November 6, 1985 stipulation, was not approved, and Mr. Petito never executed the new guarantee.

Mr. Petito also signed, as president of Hydrodyne, an Amended Disclosure Statement dated April 17, 1986, which listed among the secured creditors of Hydrodyne: "National Westminster Bank in the sum of approximately $600,000.00 secured by the pledge of machinery, equipment, inventory, as well as the personal guarantee of Joseph Petito, and assignment of all shares owned by Petito." Before a chapter 11 plan of reorganization was confirmed, the Bankruptcy Court converted the case to one under chapter 7 of the Bankruptcy Code. When the chapter 7 liquidation was completed, Hydrodyne still owed the Bank $608,000 plus interest and attorneys' fees.

The Bank then commenced the instant action against Mr. Petito as guarantor of Hydrodyne's obligations by summons dated February 14, 1991, well beyond the six year Statute of Limitations for enforcement of the guarantee as measured from the date of default on August 31, 1984. Mr. Petito's answer asserted a Statute of Limitations defense, and other defenses and counterclaims not pertinent to this appeal. Both parties thereafter moved for summary judgment. The Supreme Court granted Mr. Petito's cross motion for summary judgment on the ground that the statutory limitations period had not been revived by a written acknowledgment by Mr. Petito of his guarantee of Hydrodyne's debt and his unquali-

fied intent to pay that debt, and denied the Bank's motion for summary judgment.

General Obligations Law § 17-101 provides that "[a]n acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules". "[I]n order to take a case out of the statute of limitations, there must be a new promise—a new contract, although founded upon the original consideration. * * * There must, at least, be a plain admission that the debt is due and the party is willing to pay it. * * * An admission of the debt in such a manner as to indicate an intent to pay is necessary to take the case out of the statute." *(Bloodgood v Bruen,* 8 NY 362, 373 [1853]; *see, Miwon, U.S.A. v Crawford,* 629 F Supp 153, 157 [SD NY 1985].)

The Supreme Court correctly rejected the Bank's arguments that the three documents referred to *supra* were sufficient to revive the Statute of Limitations under General Obligations Law § 17-101. None of the documents contained a *new* promise to pay by Mr. Petito, or a statement of his intent to pay Hydrodyne's indebtedness under his guarantee contained in the original loan documents. The July 5, 1985 letter agreement (and the November 6, 1985 stipulation in almost identical language) merely set forth that Mr. Petito "will sign a new personal guarantee," but as previously noted, the new guarantee was never signed. Moreover, those promises were conditioned on the Bank's making new loans to Hydrodyne, and Hydrodyne's reorganization under chapter 11 of the Bankruptcy Code, and neither condition was performed or satisfied.

We have recently confirmed that when a creditor is relying on a debtor's conditional promise to pay as restarting the running of the Statute of Limitations under General Obligations Law § 17-101, "the burden is on the creditor to show that the condition has been performed." *(Flynn v Flynn,* 175 AD2d 51, 52 [1991], *lv denied* 78 NY2d 863.) The Bank did not meet its burden in this case. Likewise, the April 17, 1986 Amended Disclosure Statement, which listed the Bank as a secured creditor, contained no written promise by Mr. Petito to pay Hydrodyne's debt, and reference therein to the "personal guarantee of Joseph Petito, and assignment of all shares owned by Petito" was clearly a reference to the new guarantee, Stock Pledge Agreement and Stock Power form that were

annexed as Exhibit "E" to the November 6, 1985 stipulation, none of which were in fact executed by Mr. Petito.

Accordingly, the order appealed from correctly granted Mr. Petito's cross motion for summary judgment dismissing the Bank's complaint as barred by the six-year Statute of Limitations (CPLR 213 [2]) and denied the Bank's motion for summary judgment. Whether the Bank may raise Mr. Petito's guarantee as a setoff in the Bank's reply to Mr. Petito's counterclaims (CPLR 203 [d]) was not presented to or ruled upon by the Supreme Court, and the question is therefore not properly before us on this appeal. Concur—Carro, J. P., Kupferman, Asch, Rubin and Nardelli, JJ.