**In re INTERSTATE CIGAR CO., INC., Debtor.**

Bankruptcy No. 890–81248–478.
Adv. No. 892–8394–478.

United States Bankruptcy Court, E.D. New York.

Aug. 17, 1994.

Noel W. Hauser, New York City, for defendants.

Teitelbaum, Braverman & Borges, P.C. by Slava Hazin, New Hyde Park, NY, for plaintiff.

### DECISION ON MOTION FOR SUMMARY JUDGMENT

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before this Court pursuant to an adversary proceeding commenced by the Official Committee of Unsecured Creditors of Interstate Cigar Co. (the "Committee," or "Plaintiff") seeking to recover certain accounts receivable from the Defendants, Sidney, Joel, and Gary Spielfogel (the "Defendants"). The Defendants have made a motion for summary judgment to dismiss the adversary proceeding on the grounds that the Plaintiffs' action is time barred. In opposition to the Defendant's motion, the Plaintiffs claim that the statute of limitations was extended by way of certain audit confirmation letters (the "Letters") signed by the Defendants in 1988 and 1989, which waived the Statute of Limitations defense. The Committee further cross moved for summary judgment, claiming that as a matter of law, the Letters clearly reflect that the amounts in question were loans, not gifts or compensation.

The Court finds that based on the relevant case law, including the New York General Obligations Law, the Letters constitute a waiver of the statute of limitations defense, and the Defendant's motion for summary judgment is denied. The Court further grants the Committee's cross-motion for summary judgment, finding that the Letters do in fact reflect debts due and owing from the Defendants. Since the Defendants were unable to provide the Court with relevant legal authority to the contrary, the parol evidence rule bars them from introducing evidence to contradict the clear terms of the Letters, which characterize the amounts outstanding as loans.

### STATEMENT OF FACTS

The Interstate Cigar Company ("ICC" or the "Debtor") enjoyed considerable growth from its relatively modest beginnings, and by 1980 the company was achieving gross revenues of approximately $200,000,000. At this time the Debtor's line of bank credit ranged from $40,000,000 to $44,000,000. It was during this time of prosperity that the "loan and exchange accounts" in question were created, and maintained on the books and records of the Debtor. The advances made under these accounts were characterized by the Defendant's counsel as "advances for the account of family members," and were apparently made openly and free of opposition. These advances were terminated in or about 1980. During the entire period these advances were made, the amounts were noted as loans on the Debtor's books and records. The fact that these "loan and exchange accounts" were not written off by charging the capital accounts of the owners or by any other bookkeeping method is not explained. As a result, the Debtor received the benefit of improving the appearance of its financial status.

By 1988, ICC had experienced a major change in management. Lawrence Aronson ("Aronson") originally engaged as a consultant to the Debtor, had become President and Chief Executive Officer of the Debtor. In addition, the Debtor was embroiled in litigation with the Hermans, who were former officers and shareholders of the Debtor. It was during this period, 1988 to 1989, a time of dissention and declining fortune for the Debtor, that the audit Letters in question were executed. Aronson told the Defendants that Debtor's accounting firm, Touche Ross & Co., would not issue a financial statement without confirmation of the loans as stated in the corporate books and records, and that the Debtor's bank credit line would be revoked at once if a financial statement was not

received. Defendants, who were still officers at the time the Letters were executed were also allegedly told that they would be summarily discharged if they refused to execute the Letters. Each of the Letters contained a blank space in which the Defendants could have noted any corrections or exceptions to the balances of the receivables due from each defendant. No corrections were made by any of the Defendants. The wording of the audit letters, signed by the Defendants on June 15, 1988 and June 15, 1989 "confirms" the "loan receivable" due from the Defendants to the Debtor in the amounts indicated by the Letters. In total, $1,379,684.93 is owed by the various Defendants as indicated by these Letters.

## DISCUSSION

Fed.R.Civ.P. 56(c), as made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, states "... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact", a motion for summary judgment should be granted. On a motion for summary judgment the movant has the burden of establishing the absence of any genuine issue of material fact, in addition to the burden of showing that the movant is entitled to judgment as a matter of law. *See Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278 (9th Cir.1982). The facts and inferences to be drawn from the documents submitted are considered in the light most favorable to the non-moving party. *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 709 (2nd Cir.1991) *citing EAD Metallurgical, Inc. v. Aetna Casualty & Sur. Co.,* 905 F.2d 8, 10 (2 Cir.1990). Upon consideration of the pleadings and various issues before this Court, there being no issue of material fact, summary judgment is appropriate in this case.

█ The issue before the Court is whether the Letters signed by the Defendants within six (6) years prior to the issuance of the instant complaint, negates the Statute of Limitations defense put forth by the Defendants, and results in Plaintiff's having brought this adversary proceeding timely.

█ The New York General Obligations Law § 17–101 states:

An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property. This section does not alter the effect of a payment of principal or interest.

N.Y.Gen Oblig. § 17–101. New York case law interpreting this provision is clear that to constitute a waiver of a statute of limitations defense pursuant to § 17–101, a signed writing must be produced that i.) clearly acknowledges an existing debt and ii.) contains nothing inconsistent with an intention on the part of the debtor to pay it. *See, e.g., Scrofani v. Fred–Rick Holding Corp.,* 201 A.D.2d 639, 608 N.Y.S.2d 247, 248 (2d Dep't.1994); *Estate of Vengroski v. Garden Inn,* 114 A.D.2d 927, 495 N.Y.S.2d 200 (2d Dep't.1985); *Park Assocs. v. Crescent Park Assocs.,* 159 A.D.2d 460, 552 N.Y.S.2d 314 (2d Dep't.1990); *Flynn v. Flynn,* 175 A.D.2d 51, 572 N.Y.S.2d 307 (1st Dep't.1991), *appeal denied* 78 N.Y.2d 863, 578 N.Y.S.2d 878, 586 N.E.2d 61 (1991); *Lew Morris Demolition Co. v. Board of Education,* 40 N.Y.2d 516, 387 N.Y.S.2d 409, 355 N.E.2d 369 (1976).

█ Contrary to the Defendants' argument, New York law does not require that the writing contain a new promise to pay in order to extend the running of the statute of limitations. The case cited in support of Defendant's position, *National Westminster Bank USA v. Petito,* 608 N.Y.S.2d 427 (1st Dep't.1994), in fact holds that a writing which adds a condition precedent to the original obligation, thereby changing the nature of the obligation, will not recommence the statutory time period. *See also, Sichol v. Crocker,* 177 A.D.2d 842, 576 N.Y.S.2d 457, 458 (3d Dep't.1991). The instant case contains no such condition upon which the Defendant's liability rests. The Letters, countersigned by the Defendants, list the total loans receivable due at $1,379,684.93. The language

found in the Letters contain nothing inconsistent with a clear intent of the Debtors to repay the loans.

The Defendants further allege that the parol evidence rule, which would bar the introduction of extrinsic evidence that would contradict the terms of the Letters, is inapplicable in this case. The parol evidence rule, which precludes a party from introducing extrinsic evidence to contradict and/or vary an unambiguous, clear, and integrated agreement, is substantive law in New York. *See Thomson McKinnon Secur., Inc. v. Harris*, 139 B.R. 267 (S.D.N.Y.1992). However, exceptions to the parol evidence rule exist. Parol evidence is admissible to show that a document purporting to be a valid and enforceable agreement is in fact not an agreement. In this instance, the Court finds that the Letters clearly represent an agreement between both parties that a debt was due and owing.

In addition, while parol evidence has also been allowed to show that a contract was not a contract but rather a "sham," the letters clearly do not fall within this category. *See, e.g., Bernstein v. Kritzer*, 253 N.Y. 410, 171 N.E. 690 (1930); *Arner v. Arner*, 89 A.D.2d 899, 453 N.Y.S.2d 716 (2d Dep't.1982). The court in *Bersani v. General Accident Fire & Life Assurance Corp.*, 36 N.Y.2d 457, 369 N.Y.S.2d 108, 330 N.E.2d 68 (1975) held that while parol evidence may be introduced to show the intention of parties not to enter into an enforceable contract, such principle is predicated on proof that the entire contract was to be a nullity. The *Bersani* court further stated that where admission of parol evidence is contrary to law and public policy, such admission should be denied. *Id.*, 369 N.Y.S.2d at 108.

The only claims made by the Defendants to support their argument regarding the admissibility of parol evidence is: (1) that the parties never intended the loan account to evidence an agreement to repay a debt to the Debtor; and (2) that Aronson threatened to summarily discharge them from their positions if they refused to execute the Letters, thereby coercing them into signing. These claims are insufficient as a matter of law and are unsupported by the evidence. Assuming threats by Aronson were made and could be carried out, the Defendants had a choice. They elected to sign the Letters without any attempt to disclaim any liability. The Defendants are not excused from the consequences of their actions, especially since third parties (the Debtor's lenders) relied on the Letters, perhaps to their detriment. If the Letters constituted false representations, which are relied upon by third parties, public policy would prohibit this Court from declaring these Letters a nullity. This Court will not invalidate a document relied upon by the bank's auditors, lenders, and perhaps other entities at the request of the Defendants, who now claim that the "loans" were not "loans" at all, regardless of what the Defendants "intended" when they placed these debts on the Debtor's books and records. This would clearly be against public policy and will not be countenanced.

It is uncertain whether Aronson could have summarily removed the Defendants as officers of the Debtor. The Defendants did not provide any evidence that Aronson alone, without the approval of the Board of Directors, had the votes necessary to carry out this alleged threat. In any event, it is not necessary to conduct a hearing to determine any of the factors regarding the coercion of the Defendant into signing the Letters, when public policy would prohibit the Court from declaring the Letters null and void under the circumstances in this case.

### CONCLUSION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2).

The Letters appear to be unambiguous, clear and continuing acknowledgement of a debt due to the Debtor as reflected in the Debtor's books and records. Each letter is signed by one of the Defendants. The Letters clearly reflect "loans receivable" due from the Defendants to the Debtor, with no other meaning possible by inference or otherwise. The Letters were prepared in order to shore up the Debtor's line of credit, and the accounting firm, the lenders, and perhaps

other entities relied on the Defendants' representations. The amounts were always reflected as loans on the Debtor's books and records, without any changes. The Defendants cannot now change the characterization of the accounts when it suits them.

When the Defendant's signed confirmation Letters in 1988 and 1989, they waived the defense of the Statute of Limitations on the original claim and extended the Statute for six (6) years from the signing of the letters. The Plaintiff's complaint is timely. The Defendants have failed to demonstrate to the Court why an exception to the parol evidence rule should apply in this case and this Court holds that the parole evidence rule bars the Defendants from introducing evidence as to the intent of the parties. Therefore, this Court grants Plaintiff's motion for summary judgment and denies the Defendant's motion.

Settle an Order in accordance with this decision.