23-934-cv
*Bloomfield Inv. Res. Corp. v. Daniloff*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of July, two thousand twenty-four.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> RAYMOND J. LOHIER, JR.,
> STEVEN J. MENASHI,
> *Circuit Judges.*

_____

BLOOMFIELD INVESTMENT RESOURCES CORP.,

　　　　*Plaintiff-Counter-Defendant-Appellee*,

　　　　v.　　　　　　　　　　　　　　　　　23-934-cv

ELLIOT DANILOFF,

　　　　*Defendant-Counter-Claimant-Appellant.*

_____

| | |
|---|---|
| For Plaintiff-Counter-Defendant-Appellee: | STEVEN COOPER (Zachary Kaye, Casey J. Olbrantz, *on the brief*), Reed Smith LLP, New York, NY. |
| For Defendant-Counter-Claimant-Appellant: | MICHAEL L. SOSHNICK, Law Office of Michael L. Soshnick, Mineola, NY (Scott T. Horn, Mischel & Horn, P.C., New York, NY, Richard Lomuscio, Tarter Krinsky & Drogin, LLP, New York, NY, *on the brief*). |

Appeal from a judgment of the United States District Court for the Southern District of New York (Marrero, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** in part.

Defendant-Counter-Claimant-Appellant Elliot Daniloff ("Daniloff") appeals from a judgment of the United States District Court for the Southern District of New York, entered on May 23, 2023, holding him liable for compensatory and punitive damages in connection with fraudulent inducement and breach of contract claims brought by Plaintiff-Counter-Defendant-Appellee Bloomfield Investment Resources Corporation ("Bloomfield"). After a four-day bench trial, the district court concluded that Daniloff fraudulently induced Bloomfield's principal, David Reuben ("Reuben"), to transfer $25 million into the account of Daniloff's investment fund pursuant to an oral loan and then reneged on the agreement to pay it back. On appeal, Daniloff raises three arguments: 1) that the district court erred in determining that Bloomfield established its breach of contract claim; 2) that the district court erred in determining that Daniloff fraudulently induced Bloomfield to transfer its funds; and 3) that the district court erred in awarding Bloomfield punitive damages. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"Following a civil bench trial, we review a district court's findings of fact for clear error, and its conclusions of law *de novo*; resolutions of mixed questions of fact and law are reviewed *de novo* to the extent that the alleged error is based on the misunderstanding of a legal standard, and for clear error to the extent that the alleged error is based on a factual determination." *Citigroup Glob. Mkts. Inc. v. Abbar*, 761 F.3d 268, 273 (2d Cir. 2014) (quoting *Diebold Found., Inc. v. Comm'r*, 736 F.3d 172, 182 (2d Cir. 2013)).

## I. Breach of Contract

This court relies on four factors in assessing whether an oral agreement has been formed: (1) whether a party expressly required the agreement to be in writing, (2) whether the parties partially performed, (3) whether the parties agreed to the alleged contract terms, and (4) whether the agreement at issue is a type of contract that parties usually put in writing. *See Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Here, the "question of whether a contract has been formed" is "a question of fact." *Vacold LLC v. Cerami*, 545 F.3d 114, 123 (2d Cir. 2008) (internal quotation marks omitted); *see also Niemira v. Dean*, 666 N.Y.S.2d 75 (4th Dep't 1997). Under the clear error standard that applies to questions of fact, "there is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence." *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001) (quoting *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994)).

In arguing that the district court erred in determining that he breached an oral loan contract with Bloomfield, Daniloff principally contends that Bloomfield presented insufficient evidence of mutual assent, the third *Winston* factor. We are not persuaded. The district court thoroughly recounted its factual findings, based on four days of testimony, to support its determination that Daniloff and Reuben had a meeting of the minds as to the oral loan agreement in the early days of September 2011. *Bloomfield Inv. Res. Corp. v. Daniloff*, No. 17 CIV. 4181, 2023 WL 3597618, at *18 (S.D.N.Y. May 23, 2023). As the district court highlighted, the terms of the agreement were memorialized in multiple emails spanning from 2011 to 2015, and Daniloff's later efforts to change those terms "demonstrate[d] that he was aware of and had agreed to the original terms." *Id*. Moreover, a November 26, 2014 modification to the original agreement—signed by both Daniloff and Bloomfield representatives—reiterated Daniloff's obligation to repay the $25 million

loan. *Id.* Given this evidence and the strong presumption in favor of the district court's factual findings, we see no clear error in its determination that there was mutual assent.

Daniloff argues that the $25 million was an investment, not a loan, and that the district court erred in its treatment of a document titled, "Investment MOU," which Reuben did not sign and, according to his testimony, had "never seen" before. App'x 313. We disagree. The district court found the terms of the MOU to be "consistent with the Original Agreement," *Bloomfield Inv. Res. Corp.*, 2023 WL 3597618, at *11, and determined that the document—which, among other things, contemplated that Reuben would recover his $25 million over time and control the funds until he was fully repaid—lent further support to the proposition that the $25 million transferred to Daniloff's investment fund "actually operated as a loan," rather than an investment. *Id.* at *14; *see also id.* at *19. We discern no clear error in this factual determination.

Finally, we reject Daniloff's argument that the district court erred in relying on parol evidence to determine that a written "Subscription Agreement" and related investment document (the "PPM") were "never intended to take effect" and did not amount to a "binding contract governing the parties' relationship." *Id.* at *19–20. "[T]he parol evidence rule does not bar the admission of parol evidence to show that what appears to be a contractual obligation is, in fact, no obligation at all." *Paolangeli v. Cowles*, 617 N.Y.S.2d 936, 938 (3d Dep't 1994) (internal quotation marks omitted); *see also Bernstein v. Kritzer*, 171 N.E. 690 (N.Y. 1930). And the fact that the Subscription Agreement lacked a merger or integration clause further invites examination of "extrinsic evidence to prove the nature of [the parties'] mutual promises." *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 295 (2d Cir. 1999). This is because, "under New York law, where . . . the written agreement does not contain a merger clause, the court must determine whether the agreement is integrated 'by reading the writing in the light of surrounding circumstances, and by determining

4

whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing.'" *Bourne v. Walt Disney Co.*, 68 F.3d 621, 627 (2d Cir. 1995) (quoting *Braten v. Bankers Tr. Co.*, 456 N.E. 2d 802, 804 (N.Y. 1983)). In this context, the district court's consideration of "the type of transaction involved, the scope of the written contract, and the content of any other agreements asserted," *Bourne,* 68 F.3d at 627 (internal quotation marks omitted)—including the original, oral loan agreement—was appropriate.

Although Daniloff claims there is no evidence as to "who told Reuben that the Subscription Agreement/PPM would not be enforced and when," Appellant's Br. 54, the district court found that, "roughly around September 2011," Daniloff informed Reuben that he would need the loan to be disguised as an investment so that Daniloff could borrow against it, *Bloomfield Inv. Res. Corp.*, 2023 WL 3597618, at *2–3. This finding is supported by voluminous emails as well as testimony, which "confirm[ed]" that the Subscription Agreement was to "effectuate" the oral contract, not "supersede" it. *Id.* at *19.

Moreover, for nearly four years, Reuben repeatedly expressed his understanding that the transaction was a loan and not an investment, and Daniloff never indicated anything to the contrary in response. *Id.* at *11. We see no error in the district court's consideration of this parol evidence and no clear error in its conclusion that the Subscription Agreement and related PPM were never intended to take effect.

**II.     Fraudulent Inducement**

Daniloff next objects that the fraudulent inducement claim is duplicative of the breach of contract claim. "[A] contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations." *Rocanova v. Equitable Life Assurance Soc'y of U.S.*, 634 N.E.2d 940, 944 (N.Y. 1994). Nevertheless, a plaintiff can

5

maintain a claim of fraud in such a situation by demonstrating "a fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). In New York, "a promise made with a preconceived and undisclosed intention of not performing it constitutes a misrepresentation" of "present fact, not of future intent" "collateral to, [and] the inducement for, the contract." *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003, 1004 (N.Y. 1986) (cleaned up).

Here, the district court found that Daniloff fraudulently misrepresented several things, collateral to the terms of the contract itself, including the nature of the account to which he requested the loan proceeds be sent. Daniloff promised that Bloomfield would retain control of the money and that its transfer into an investment account was for visibility purposes only. But Daniloff in fact arranged for this transfer so that he could unilaterally control the funds. *Bloomfield Inv. Res. Corp.*, 2023 WL 3597618, at \*10. The purpose of this misrepresentation is "made clear by the fact that, contrary to his representation, Daniloff immediately began using the funds once the transfer from Bloomfield was completed, the funds were used without Bloomfield's authorization, and the $25 million was not actually transferred to a segregated bank account . . . over which Bloomfield was to have signatory authority." *Id.* at \*11. The record thus supports the district court's finding that Daniloff's conduct involved "distinct fraudulent misrepresentations" collateral to the contract. *TVT Records v. Island Def Jam Music Gr.*, 412 F.3d 82, 91 (2d Cir. 2005).

Daniloff also argues that the district court failed to make sufficiently specific findings of fact as to the material misrepresentation, as required to find liability for fraudulent inducement in New York. We again disagree. In addition to ample witness testimony that Daniloff assured Bloomfield that the funds' transfer into the investment account would not affect Bloomfield's control over those funds, the district court specifically identified a September 6, 2011 email from a

6

Bloomfield agent to Daniloff, outlining Bloomfield's understanding of the "investment" as being "for visibility purposes" and "not sitting in the fund" "in reality." *Bloomfield Inv. Res. Corp.*, 2023 WL 3597618, at \*10. There is no evidence that Daniloff ever took issue with this email, which supports the conclusion that it reflects Daniloff's own assurances. *See Columbia Gas Sys., Inc. v. United States*, 473 F.2d 1244, 1250 (2d Cir. 1973) (noting that "the absence of a contrary explanation" can itself indicate intent); *see also Gasson v. Premier Cap., LLC*, 43 F.4th 37, 44 (2d Cir. 2022)).

We likewise reject Daniloff's contention that the district court erred in determining that Bloomfield reasonably relied on Daniloff's misrepresentations. Determining reasonable reliance is a "fact-intensive" inquiry. *Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). Here, as the district court noted, "using the Synergy Hybrid Fund as a 'conduit' made sense to Reuben, who had routinely entered into large-scale deals in Russia on 'oral agreements alone.'" *Bloomfield Inv. Res. Corp.*, 2023 WL 3597618, at \*12. And as Reuben testified, he relied on Arkadiy Orkin, a close friend who vouched for Daniloff as practically part of his family and who guaranteed that he would monitor the deal. *Id.* at \*13. Furthermore, as the district court noted, the reasonableness of Bloomfield's reliance was enhanced because Daniloff's subsequent behavior aligned with his previous representations. *Id.* at \*14. This is not a case where the plaintiff "close[d] his eyes to an obvious fraud"—rather, Reuben thoroughly sought "to ferret out the reliability or truth about" the defendant's conduct, *Crigger v. Fahnestock & Co., Inc.*, 443 F 3d. 230, 234 (2d Cir. 2006), by repeatedly restating the original agreement's terms, partially performing in accord with those terms, and seeking clarifications when Daniloff appeared to violate them. This is sufficient to support the district court's determination that Bloomfield adequately demonstrated that its reliance on Daniloff's misrepresentation was reasonable.

7

### III.    Punitive Damages

Finally, Daniloff contests the $1 million in punitive damages that the district court awarded to Bloomfield.   In awarding these damages, the district court recognized that New York law requires a showing of "behavior aimed at the public generally" where the fraudulent inducement arises directly from a contractual relationship.   Nevertheless, the district court determined that it could award such damages, even absent such a showing, given its conclusion that Daniloff's fraud against Bloomfield was "gross, wanton, and willful."   *Bloomfield Inv. Res. Corp.*, 2023 WL 3597618, at *16.   The district court thus appears to have relied on a categorical rule that Bloomfield need not allege a public harm because Daniloff and Bloomfield did not have a prior long-standing contractual relationship at the time of the fraudulent inducement.   *Id.* at *15.   We disagree.

Punitive damages are not recoverable for breach of contract unless the defendant engages in conduct "aimed at the public generally."   *Rocanova*, 634 N.E.2d 943 (internal quotation marks omitted).   The New York Court of Appeals has also suggested that this requirement applies whenever an action "arises from" or "has its genesis in" a contractual relationship between the parties. *N.Y. Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995); *see also Schonfeld v. Hilliard*, 218 F.3d 164, 183–84 (2d Cir. 2000).   The district court erred in discarding this requirement.

Bloomfield argues that we should excuse this error because Daniloff's investment fund was subject to a $75,000 civil monetary fine and a cease-and-desist order issued by the Securities and Exchange Commission over violations of Sections 203(e) and 203(k) of the Investment Advisers Act of 1940.   *See Bloomfield Inv. Res. Corp.*, 2023 WL 3597618, at *9 n.6.   But the district court's award was premised on an erroneous interpretation of New York law. We do not take it upon ourselves to supply a potential basis for satisfying the requirement; instead, we vacate the

award and remand to the district court for it to determine in the first instance whether the public aim showing is satisfied by the facts and circumstances of this case.

*     *     *

We have considered Daniloff's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court as to Bloomfield's fraudulent inducement and breach of contract claims, we **VACATE** the award of punitive damages, and we remand for the district court to determine whether such damages are appropriate under the correct legal standard.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court